**DICTOGRAPH PRODUCTS COMPANY, Inc., Plaintiff-Appellant,**

v.

**SONOTONE CORPORATION, Emil Henry Greibach and S. Michael Pineles, Defendants-Appellees.**

**No. 137, Docket 23716.**

United States Court of Appeals Second Circuit.

March 28, 1956.

Joseph M. Callahan, New York City, for petitioner.

Charles H. Tuttle, New York City, opposed.

Before HAND, SWAN and FRANK, Circuit Judges.

PER CURIAM.

On this appeal we may not consider any depositions or other evidence that were not filed in the district court when Judge Ryan decided the motion. It is true that under Rule 75(h) of the Rules of Civil Procedure, 28 U.S.C.A., we may on our "own initiative" direct that "a supplemental record shall be certified and transmitted by the clerk of the district court"; but obviously that should comprise only such "records" as were before the district court itself, for this court has no jurisdiction save to correct errors, and it cannot be an error to ignore evidence never presented to the court. The only depositions that were filed in the district court were Nowak's and Koch's, and neither were printed in

the appendices. We have examined Nowak's—Koch's obviously adding nothing of moment to what was already before us. Nowak swore that he disclosed to Lieber and Pineles Koch's invention and showed to Greibach Koch's wooden models of it. That was in May, 1933, and from June, 1933, until December, 1934, the Sonotone Company employed Nowak to prepare their advertising. While so engaged he helped to exploit Greibach's invention, and, though he does not concede that he knew it to have been copied from the models he says he showed to Greibach, that is certainly a not unlikely inference. It follows that if his deposition is true, a serious doubt arises whether he did not become a party to the scheme, and whether the "wrong" that his deposition later gave him an "opportunity to right," as he put it, was one in which he had participated. At best, therefore, his testimony would be open to serious challenge, and would be far from conclusive.

However, we do not rest upon that, but upon the fact that not only did Koch know during the interference proceeding the substance of what is in the deposition, but also that Nowak was available to him as a witness in that proceeding and to the plaintiff long afterwards. The interference was declared in August, 1934, and the examiner did not file his decision until February, 1936. During the progress of the proceeding Koch's attorneys again and again showed that they knew of Nowak's intimate acquaintance with Koch's invention while he had been in the plaintiff's employ. For example, Koch swore that "every development that we made on the Acousticon was always demonstrated to Mr. Nowak"; and Nowak took Koch's wooden models away with him. Further, Koch's attorneys also knew that in March, 1933, Nowak, Ring and Greibach had an interview at which Greibach swore that Nowak had said of an invention of Benway's (which Nowak, Ring and Benway were asking Greibach to design) that "the Acousticon people have something similar," and that thereupon Greibach said "it must be my

inertia reaction device." On this talk Koch's briefs in the interference proceeding repeatedly relied as evidence that Greibach had learned of his invention through Nowak from Koch. Thus, the brief before the Board of Appeals (p. 9) called its attention to the fact that the date of "Exhibit 11, namely May 10, 1933, is very shortly after Greibach learned from Nowak, in March 1933 of Koch's development." This it repeated on pages 34 and 39; and in all three instances it asked the Board to infer that Nowak had told Greibach enough of Koch's device to allow him to copy it, and that he did copy it and later forged the dates on his models. Koch's brief in the Court of Customs and Patent Appeals (p. 14), quotes the same testimony and asserts that it "shows that Greibach understood fully from what Nowak told him, the exact nature of Koch's Acousticon device. We contend that thereupon Greibach made his Exhibit 11 and properly inscribed on it the date when he completed it, namely, May 10, 1933." Indeed the same brief (p. 15), made an explicit charge of fraud: "What is of importance is the extent to which this Court should rely on its own examination of the disputed date to determine whether it" (Exhibit 11) "has been altered with fraudulent intent."

The appellant answers that the only issue in the interference proceeding was whether Greibach or Koch was the prior inventor, not whether Greibach stole Koch's invention in pursuance of a conspiracy between him, Lieber and Pineles. We may assume as much, *arguendo*, for it does not affect the result. The judgment in the interference proceeding is conclusive because it contains an estoppel vital to the success of the action at bar; and, although the judgment only decided that Greibach was the first inventor, that finding in fact depended upon whether he had made his invention from what he learned of Koch's machine. If he did copy Koch, he got his patent by a fraud: a fraud in which he, Lieber and Pineles joined, and which in part he executed by forging the dates on Exhibits 11 and

14. If he committed that fraud, he stole the patent, and if he stole the patent he was not the first inventor. On the other hand if he was the first inventor, he did not commit the fraud.

Nowak's testimony would indeed have been relevant evidence of the fraud; but if, as we have shown, Koch's lawyers were wholly aware of Nowak's connection with the Sonotone Company beginning in June of that year, and of the interview on which, by hypothesis Greibach got the means to perpetrate the fraud and steal the invention; then was the time to decide whether or not to call Nowak. It was not permissible to let the interference be decided on the chance that Nowak's testimony would not be necessary; and later to use it to assail the finding that there had been no fraud.

In addition, so far as appears, the plaintiff did not refer to Nowak's deposition after Judge Ryan had declared on April 25, 1955, that he would "form my own judgment" about the correctness of Judge Weinfeld's disposition of the motion for summary judgment, or after he repeated that determination on May 2nd and May 9th, and had made his decision on May 16th. It is true that during all this time the plaintiff's attorney was ill in a hospital; but on May 13th he was well enough to write a letter to Judge Ryan in which, although he protested against any dismissal of the action during his illness, he neither mentioned the deposition nor suggested that he wished to present any new evidence. The judgment was entered on May 23, and plaintiff filed an appeal on May 26th. On June 9th, five days after the plaintiff's attorney had returned to his home, he swore to an extended affidavit in support of a motion to be allowed to withdraw the appeal and to vacate the judgment.

In this, although he again warmly protested against the judgment, especially on the ground that Judge Ryan was without power to reconsider Judge Weinfeld's order, he did not suggest that he wished to file any other of the existing depositions, nor did he mention Nowak's deposition. Finally, when this motion came on for a hearing before Judge Ryan on June 17, and the judge agreed to vacate the judgment on condition that the case should go on for trial at once, the plaintiff withdrew the motion.

▪ To sum up, therefore, these are the facts. (1) The deposition of Nowak is the only new evidence to be considered; at best it contains testimony whose cogency is subject to plausible doubt, and which is in any event only cumulative of the plaintiff's position in an old controversy, hotly contested. (2) Nowak was available during the interference proceeding, during which Koch's position was that it was through Nowak that Greibach fraudulently stole the invention. (3) Nowak remained available for nearly fifteen years thereafter before the deposition was taken, and the plaintiff did not use it to oppose Judge Ryan's declaration that he would reopen Judge Weinfeld's decision, although the deposition was then on file. (4) The judgment on the interference was twelve years old when the action at bar was begun; and several of the Sonotone witnesses, including Lieber, have died. (5) The patent has expired and the transaction on which it was granted took place now nearly twenty-three years ago. If such a judgment is to be set aside upon such a showing, there is indeed little left of the doctrine that it is the purpose of the law to settle disputes.

Petition denied.