**REPUBLIC GEAR COMPANY, Plaintiff-Appellant,**

v.

**BORG–WARNER CORPORATION, Defendant-Appellee.**

No. 363, Docket 30959.

United States Court of Appeals Second Circuit.

Argued March 7, 1967.

Decided June 30, 1967.

552

Sidney Bender, Leventritt, Bush, Lewittes & Bender, New York City, for plaintiff-appellant.

James E. S. Baker, Sidley, Austin, Burgess & Smith, Chicago, Ill., for defendant-appellee.

Nathan Shapiro, Alan Shapiro, New York City, for non-party witness.

Before LUMBARD, Chief Judge, and WATERMAN and SMITH, Circuit Judges.

WATERMAN, Circuit Judge:

Republic Gear Company (Republic) brought a diversity action against Borg-Warner Corporation (Borg-Warner) in the United States District Court for the Northern District of Illinois in which Republic complains that Borg-Warner tortiously interfered with the contractual relations Republic had with two Brazilian corporations, Maquinas York S/A and Industrial Automobilistica Borton S/A (Borton).

Soon after commencing this action in Illinois Republic filed a notice with the United States District Court for the Southern District of New York to take the deposition for use in the Illinois proceeding of a New York City attorney, one Frank E. Nattier, Jr., as a non-party witness. Nattier was subpoenaed to bring with him to the deposition hearing any documents in his possession that might be relevant to the subject matter involved in Republic's Illinois action. During the progress of the taking of his deposition Nattier refused to produce certain documents claimed by him to be within the attorney-client privilege and hence excludable under Fed.R.Civ.P. 26(b) from depositional examination. Nattier asserted the privilege on behalf of his clients Maquinas York and Borton, which he had professionally represented in 1959 when they terminated their contractual relations with Republic and began relations with Borg-Warner.

Twenty-eight months later Republic moved pursuant to Fed.R.Civ.P. 37(a) in the United States District Court for the Southern District of New York for an order compelling Nattier to comply with the subpoena's direction to produce the documents. Republic claimed that the desired documents, consisting of correspondence between Nattier in New York and agents of the Brazilian companies and Republic, would reveal that Maquinas York and Borton had ceased relations with Republic because of inducements by Borg-Warner rather than, as had been stated to be the reason, because Republic had failed to supply necessary technical data required to be supplied by their contracts. Although Republic earlier had commenced actions against Maquinas York and Borton in the Southern District of New York, which actions were dismissed below for lack of jurisdiction over the defendants and which are now pending on appeal before this court, Maquinas York and Borton are not parties to the present Illinois litigation, nor, for all that appears in the record, have they expressly requested Nattier to assert claims of attorney-client privilege in their behalf in the present litigation. However, in Republic's prior actions against the Brazilian companies these very documents sought to be here produced were previously determined to be within the attorney-client or the "work-product" privileges by a Special Master appointed in those prior actions to supervise deposition proceedings and to rule on matters of privilege. In the present case the witness delivered the documents to the Chief Judge of the court below, and after a perusal of them Chief Judge Sugarman determined, as had the Special Master in the other prior litigation, that they were protected from adversary disclosure in the suit Republic had commenced against Borg-Warner either as Nattier's "work-product" or by the attorney-client privilege arising out of the

professional relationship between Nattier and his clients York and Borton. Republic's motion was denied.

Appellant, maintaining that this order is a final decision of the district court below, has invoked our appellate jurisdiction pursuant to 28 U.S.C. § 1291. Borg-Warner has moved to dismiss the appeal on the ground that the order below is not a final decision and therefore not appealable. We deny the motion to dismiss and, upon review of the issue and an examination of the documents, affirm the order below.

In approaching a resolution of the motion to dismiss the appeal two factors must be kept in mind: the order was issued in a jurisdiction other than that in which the main case is pending, and the order denied the motion to compel disclosure.

■■■ Orders dealing with discovery have been held interlocutory and therefore unappealable, when issued in the same jurisdiction as that of the main proceeding, e. g., Horvath v. Letay, 343 F.2d 463 (2 Cir. 1965); Cimijotti v. Paulsen, 323 F.2d 716 (8 Cir. 1963); Hoffa v. United States, 309 F.2d 680 (5 Cir.), cert. denied, 371 U.S. 878, 83 S.Ct. 147, 9 L.Ed.2d 115 (1962), or when, though issued in outside jurisdictions, they compelled disclosures, see, for example, Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); National Nut Co. of California v. Kelling Nut Co., 134 F.2d 532 (7 Cir. 1943); Korman v. Shull, 310 F.2d 373 (6 Cir. 1962); but also see Covey Oil Co. v. Continental Oil Co., 340 F.2d 993 (10 Cir.), cert. denied, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965). In the latter situation where disclosure is ordered and the order is not complied with, appellate review in subsequent contempt proceedings, however risky, see Horvath v. Letay, supra, 343 F.2d at 464; Covey Oil Co. v. Continental Oil Co., supra, 340 F.2d at 996–997, is available to one ordered to disclose who refuses to do so. See Cobbledick v. United States, 309 U.S. at 327, 60 S.Ct. at 542.

In the former situation "there is no jurisdictional purpose to be served," Horvath v. Letay, supra 343 F.2d at 464, by granting an immediate appeal of an order denying disclosure, for upon appellate review of the merits of the case any reversal of a lower court order issued in the discovery proceeding is enforceable after the full appellate review. However, where, as here, an order denying discovery is issued in a jurisdiction beyond that of the main proceeding, the party seeking discovery would have no effective remedy; even if the appellate court in the jurisdiction in which discovery is sought awaited a final decision in the main proceeding before acting at all it would be necessary to return to the ancillary appellate court to argue the discovery issue. And if, upon appeal, the party were successful in reversing the lower court's order and thus obtained discovery, he would be required to go back to the court where the main case had already been tried, and there, with the discovered evidence now admissible on the merits, move to retry the case. The impracticality of this cumbersome procedure compels us to grant immediate appellate review of an order which, in another context, we might properly hold to have been an interlocutory order. See Horizon's Titanium Corp. v. Norton Co., 290 F.2d 421 (1 Cir. 1961); Carter Products, Inc. v. Eversharp, Inc., 360 F.2d 868 (7 Cir. 1966); 4 Moore's Federal Practice, ¶ 26.37 [1.1–2], pp. 1712–19 (1966 ed). We do not share appellee's fear that by permitting an appeal here we are opening opportunities to litigants to harass their adversaries in situations where by skillful forum shopping a party may pursue discovery in jurisdiction after jurisdiction and, by taking appeal after appeal, delay ultimate adjudication for an unconscionable period. Our decision applies only when a witness is beyond the jurisdictional reach of the court in which the main proceeding is pending; such a witness is unlikely to be available in a sufficient number of such outside jurisdictions so as to permit shopping for a

forum in which to serve a subpoena upon him.[1]

■■■ Turning to the merits of this appeal, Republic urges that Nattier is not entitled to invoke the attorney-client privilege unless requested to do so by the clients whose confidential communications are sought to be protected, and either that the "work product" shelter is presently unavailable because the documents concerned were not prepared for this litigation, or there is "good cause" here to fashion an exception. Republic argues—and we shall assume for purposes of discussion that its argument is sound—that federal law governs the resolution of these questions, rather than the law of New York where the communications were made, the professional acts were performed, and where discovery is sought, or the law of Illinois, where the main diversity proceeding is pending.[2]

1. Nattier, the non-party witness, contends that the acceptance of his claims of privilege by the Special Master in the earlier actions commenced by appellant against Nattier's clients collaterally estops it from presently contesting his claim of privilege. Although collateral estoppel may bar relitigation of an issue even against different defendants, see James L. Saphier Agency, Inc. v. Green, 190 F.Supp. 713, 720–721 (SDNY), aff'd, 293 F.2d 769 (2 Cir. 1961), citing Israel v. Wood Dolson Co., 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956), the resolution of the issue in the prior proceeding must have been necessary to the result reached there, see Evergreens v. Nunan, 141 F.2d 927, 928, 152 A.L.R. 1187 (2 Cir. 1944) (L. Hand, C.J.); Tomlinson v. Lefkowitz, 334 F.2d 262, 264 (5 Cir. 1964), cert. denied, 379 U.S. 962, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965). Where, as here, the previous disposition was not on the merits but was only a dismissal for a lack of jurisdiction there can be no estoppel. See James L. Saphier Agency, Inc. v. Green, 293 F.2d 769, 772–773 (2 Cir. 1961).

2. Appellant maintains that federal law should be applicable because the question of admissibility of privileged communications is a procedural rather than a substantive question under Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) and therefore a federal court exercising diversity jurisdiction is required to adhere to federal rules of procedure even in the face of contrary state rules.

We find it unnecessary to decide whether appellant's argument is sound, for, as we point out infra at p. 557, any of the substantive rules of law that could be applicable here support Nattier's position. But we do not consider the question of attorney-client privilege to be only a procedural question because, as we have previously stated, in this circuit a rule of privilege is "unlike the ordinary rules of practice which refer to the processes of litigation, in that it affects private conduct before the litigation arises." Massachusetts Mutual Life Ins. Co. v. Brei, 311 F.2d 463, 466, 100 A.L.R.2d 634 (2 Cir. 1962). See Louisell, Confidentially, Conformity and Confusion: Privileges in the Federal Court Today, 31 Tul.L.Rev. 101, 117, 120–21 n. 90 (1956).

Rules of privilege are not mere "housekeeping" rules which are "rationally capable of classification as either" substantive or procedural for purposes of applying the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. (1938), see Hanna, 380 U.S. at 472–473, 85 S.Ct. at 1144. Such rules "affect people's conduct at the stage of primary private activity and should therefore be classified as substantive or quasi-substantive." Massachusetts Mutual Life Ins. Co. v. Brei, supra 311 F.2d at 466, quoting from Hart & Wechsler, The Federal Courts and the Federal System 678 (1953). Prospective application of a federal rule denying a privilege is certainly the sort of disuniformity which might well influence the choice of a forum, see Weinstein, Recognition in the United States of the Privileges of Another Jurisdiction, 56 Colum.L.Rev. 535, 545–46 (1956), an evil condemned by the Court in Hanna, 380 U.S. at 467–468, 85 S.Ct. 1136. Furthermore, to permit the fortuitous eventuality of the choice of forum to determine the legal consequences of such primary private conduct undertaken in reliance upon a state-created privilege, see Hart, The Relations Between State and Federal Law, 54 Colum. L.Rev. 489, 489–90, 508 (1954); Hill, The Erie Doctrine and the Constitution, 53 NW U.L.Rev. 427, 541, 552–53 (1958), seems clearly to alter "the mode of enforcement of state-created rights in a fashion sufficiently 'substantial' to raise the sort of equal protection problems to

■■ Republic, relying upon a pronouncement in a federal non-diversity case, supports its objection to Nattier's assertion of the attorney-client privilege by quoting from the decision in United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358–359 (D.Mass.1950) to the effect that "[t]he privilege applies only if * * * (4) the privilege has been (a) claimed and (b) not waived by the client." Appellant would conclude from this that an attorney may not claim the privilege where, as here, the client is not present. Such a conclusion obviously misconceives the federal rule. Language as that quoted above merely emphasizes that, as at common law, the "privilege is the client's, not the attorney's." 8 Wigmore, Evidence, § 2321, p. 629 (McNaughton rev. ed. 1961), in the sense that an attorney can neither invoke the privilege for his own benefit when his client desires to waive it nor waive the privilege without his client's consent to the waiver. Not only may an attorney invoke the privilege in his client's behalf when the client is not a party to the proceeding in which disclosure is sought, 8 Wigmore, op. cit. supra, § 2321, p. 629; McCormick, Evidence, § 96, pp. 194–196 (1954); Morgan, Basic Problems of Evidence, § 10

et seq., 115–16 (1962); Uniform Rules of Evidence, R. 26(1); A. L. I., Model Code of Evidence, R. 210(c) (ii), but he should do so, for he is "duty-bound to raise the claim in any proceeding in order to protect communications made in confidence." A. B. Dick Co. v. Marr, 95 F.Supp. 83, 101 (SDNY 1950), appeal dismissed, 197 F.2d 498 (2 Cir.), cert. denied, 344 U.S. 878, 73 S.Ct. 169, 97 L. Ed. 680 (1952) (Medina, D. J.). See Schwimmer v. United States, 232 F.2d 855, 863 (8 Cir.), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956); Bouschor v. United States, 316 F.2d 451, 458 (8 Cir. 1963); Robinson v. United States, 144 F.2d 392, 405 (6 Cir. 1944), aff'd on other grounds, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945); Tillotson v. Boughner, 350 F.2d 663, 665 (7 Cir. 1965); Colton v. United States, 306 F.2d 633, 639 (2 Cir. 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963) (by implication).

■ In addition to the exemplification of the rule just noted we also point out that under New York law an attorney is prohibited from divulging confidential communications in the absence of a waiver by his client, see N.Y.C.P.L.R. § 4503(a) [3] and 'so, too,

---

which the Erie opinion alluded," see Hanna, 380 U.S. at 469, 85 S.Ct. at 1143.

Our view that state rules on privilege are substantive for *Erie* purposes is not only supported by reason but also by the weight of authority, Massachusetts Mutual Life Ins. Co. v. Brei, 311 F.2d at 466. See, e. g., Baird v. Koerner, 279 F. 2d 623, 632 (9 Cir. 1960); Krizak v. W. C. Brooks & Sons, Inc., 320 F.2d 37, 43 (4 Cir. 1963); Palmer v. Fisher, 228 F.2d 603, 608 (7 Cir. 1955), cert. denied, sub nom. Fisher v. Pierce, 351 U.S. 965, 76 S.Ct. 1030, 100 L.Ed. 1485 (1956); 2B Barron & Holtzoff, Federal Practice and Procedure § 967 at 243–44 (Wright ed. 1961); see Louisell, supra at 117, Weinstein, supra at 546; Note, Choice of Procedure in Diversity Cases, 75 Yale L.J. 477, 482, 485 ff. (1966); Comment, Evidentiary Privileges in the Federal Courts, 52 Calif.L.Rev. 640, 648 (1964); see also authorities cited in Massachusetts Mutual Life Ins. Co. v. Brei, supra 311 F.2d at 465–466, n. 3.

Appellant also assumes that the scope of protection of an attorney's work product should be governed by federal law. However, that issue, too, is not before us. See infra p. 558.

An additional problem which we do not need to treat is that of whether, in a diversity discovery proceeding in one jurisdiction in aid of a diversity action in another, the state law where the main case is being adjudicated or the state law where the discovery proceeding is being held should govern the discovery proceeding.

3. N.Y.C.P.L.R. § 4503(a) provides, in pertinent part: "Unless the client waives the privilege, an attorney or his employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his employee and the client in the course of professional employment. shall not disclose, or be allowed to disclose such communication * * *."

under Illinois law, see In Re Busse's Estate, 332 Ill.App. 258, 75 N.E.2d 36, 39 (1947). Therefore, as Nattier could assert the attorney-client privilege under any one of the conceivably applicable rules of law, whether it be the federal, New York state, or Illinois state rule, we need not decide which law does in fact govern this proceeding.

With reference to the documents shielded from discovery below as an attorney's "work product," we have found little authority as to whether the "work product" protection is restricted to materials prepared in connection with the very litigation in which the discovery is sought. The few lower court decisions in which disclosure was compelled dealt with material prepared for use in prior proceedings which had been fully completed before discovery was requested, see, e. g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., 207 F.Supp. 407, 410 (M.D.Pa.1962); Tobacco & Allied Stocks, Inc. v. Transamerica Corp., 16 F.R.D. 534, 537 (D.Del.1954). Those cases are thus clearly distinguishable from the present case, for here the broad purpose of the rule which is designed to encourage effective legal representation by removing counsel's fear that his thoughts and information will be invaded by his adversary if he

records them[4] would be defeated if Republic could gain access to Nattier's files by proceeding against a party Nattier did not professionally represent but nevertheless a party involved in the same transaction in which Nattier's former clients were involved. And here, of course, Nattier's former clients remain suable.[5]

Republic next contends that it has shown "good cause" for discovery of Nattier's work product within the interpretation of Fed.R.Civ.P. 34 in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385 (1947). Under *Hickman*, the party seeking disclosure has a heavy burden of establishing that the documents are "essential to the preparation of * * * [its] case," 329 U.S. at 511, 67 S.Ct. at 394. Such necessity may arise when the documents would "give clues to the existence or location of relevant facts * * * [, are] useful for purposes of impeachment or corroboration * * * [or] where the witnesses [whose information is contained in the documents sought] are no longer available or can only be reached with difficulty." 329 U.S. at 511, 67 S.Ct. at 394. But discovery is not permitted merely to aid opposing counsel "to help prepare himself * * * and to make sure that he has overlooked nothing." 329 U.S. 513,

---

4. In Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the Court stated: "Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." 329 U.S. at 511, 67 S.Ct. at 393–394.

5. The dismissals of the previous actions brought by Republic against Maquinas York and Borton in the Southern District of New York are presently pending on appeal to our court and, even if the dismissals are affirmed, the Brazilian corporations would still be subject to suit

in Brazil. Republic has filed with us an "estoppel certificate" by which it agrees not to use any information obtained from Nattier against either of the Brazilian corporations, and argues that this completely protects them from being prejudiced by any information disclosed by Nattier. We point out, however, first that this certificate was not before Judge Sugarman and is not, therefore, part of the present appellate record. Dictograph Prod. Co. v. Sonotone Corp., 231 F.2d 867 (2 Cir.), petition for cert. dismissed, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1955); Jaconski v. Avisun Corp., 359 F.2d 931 (3 Cir. 1966). And even if the certificate were properly before us, the alleged protection stated to be thereby afforded would be illusory, for our court has no jurisdictional power to enforce any such estoppel if Republic or its assigns should bring suit against the Brazilian corporations in Brazil.

67 S.Ct. at 394. Here, Republic assertedly seeks disclosure in order to impeach the deposition testimony of one Pusset, the officer of Maquinas York who negotiated with both Republic and Borg-Warner. We have carefully examined each of the subject documents *in camera*, as did both Judge Sugarman below and the Special Master before him, and we find that, despite Republic's representations of need for this material, none of the documents protected as part of Nattier's work product are essential to the preparation of Republic's case on the critical issue of alleged tortious inducements by Borg-Warner. At most they might possibly be helpful to Republic in the thorough preparation of its case; but this circumstance is, of course, insufficient to justify an exception to the strong policy underlying the privacy of Nattier's professional activities. See Hickman, supra at 513, 67 S.Ct. 385.

Finally, we observe that the New York "work product" rule is one of qualified privilege modeled after Hickman v. Taylor, see N. Y. CPLR § 3101, Legislative Studies and Reports 8; Marco v. Sachs, supra 109 N.Y.S.2d 224, 225–226 (S.Ct.1951) (by implication,) and that the Illinois rule provides an absolute protection for such materials, which, as the correspondence here, reflects an attorney's mental processes, Monier v. Chamberlain, 35 Ill.2d 351, 221 N.E.2d 410, 416–417 (Ill.1966), Ill. Ann.Stat., c. 110, § 101.19–5, Joint Committee Comments, at p. 147 (Smith-Hurd 1956). Therefore, the "work product" documents are protected from discovery irrespective of which law is deemed determinative, as is the situation with reference to the attorney-client privilege. Thus it becomes unnecessary to decide the choice of law issue.

Appellant's remaining contentions are without merit.[6] Accordingly, the judgment below is affirmed.

---

6. Nattier, in support of the motion to dismiss this appeal, filed an affidavit with us in which there is an indication that one of the two Brazilian companies has been dissolved. Republic accepts this as a factual statement though neither Nattier nor it identifies which of the two Brazilian companies may be the dissolved one, and, citing the Uniform Rules of Evidence, Rule 26(1), it argues that the attorney-client privilege was terminated by the dissolution of this company. We need not consider whether the privilege is so terminated, though we note that a dissolved corporation can sue and be sued in New York, see N.Y. Business Corporation Law §§ 1006(a) (4), (b), and 1311, for this motion was not before the court below. Dictograph Prod. Co. v. Sonotone Corp., 231 F.2d 867 (2 Cir.), petition for cert. dismissed, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1955); Paramount Film Distrib. Corp. v. Civic Center Theatre, Inc., 333 F.2d 358 (10 Cir. 1964).