Irving STOLBERG, Plaintiff,

v.

Hilton C. BULEY, individually and as President of Southern Connecticut State College, et al., Defendants.

Civ. No. 13591.

United States District Court, D. Connecticut.

June 1, 1970.*

---

* Petition for writ of mandamus denied by Court of Appeals on June 8, 1970.

Louis M. Winer, of Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., for plaintiff.

David B. Beizer, Asst. Atty. Gen. of State of Connecticut, Hartford, Conn., for defendants.

TIMBERS, Chief Judge.

## QUESTION PRESENTED

In this action brought by plaintiff, an assistant professor of geography at Southern Connecticut State College, against the president of the College and the members and secretary of the Board of Trustees for the State Colleges of the State of Connecticut, pursuant to the Civil Rights Act of 1871, seeking dclaratory and injunction relief plus damages, arising out of the termination of plaintiff's employment and denial of tenure, and alleging in connection therewith denial of procedural and substantive due process and equal protection of the laws, plaintiff has moved for production of documents, Rule 34, Fed.R.Civ.P., and to compel defendant Hilton C. Buley to answer a deposition question, Rule 37 (a), Fed.R.Civ.P. Defendants have opposed both motions solely on the ground that the documents and information sought are "attorney-client privileged communications". For the reasons stated below, the Court overrules the claim of privilege and grants plaintiff's motions.

## GRAVAMEN OF PLAINTIFF'S GRIEVANCE

Emerging from the voluminous documents submitted to the Court on the instant motions (and omitting details believed to be unnecessary for present purposes), the gravamen of plaintiff's grievance appears to be:

(a) That, after a year and a half of satisfactory service as assistant professor of geography at Southern Connecticut State College, he was informed in February 1968 by its president, Dr. Buley, that he would not be recommended for tenure because of (i) an invitation he had sent to his fellow faculty members to join in a Peace Program and Memorial Service on the New Haven Green relating to the war in Vietnam, (ii) statements he had made as president of the Southern Connecticut Chapter of the American Association of University Professors relating to the dismissal of students at Albertus Magnus College in New

Haven, and (iii) his failure to pay for certain cafeteria meals;

(b) That, after appealing Dr. Buley's decision through various administrative channels, plaintiff was informed in August 1968 by Dr. Buley that the latter's action of February 1968 had been rescinded and by the Board of Trustees that its Personnel Committee had closed its review of plaintiff's case;

(c) That, after resuming his services as an assistant professor in September 1968, plaintiff again was notified in February 1969 by Dr. Buley that he would not receive tenure and that his employment would be terminated as of June 30, 1969; and

(d) That, after a second administrative appeal, plaintiff was notified on June 13, 1969 that the Personnel Committee of the Board of Trustees had rejected his appeal and that Dr. Buley's action denying him tenure and terminating his employment would stand.

## COURT'S IN CAMERA EXAMINATION OF DOCUMENTS SOUGHT

During the course of pre-trial discovery in the instant litigation commenced December 15, 1969, plaintiff has sought and obtained from defendants many documents and much information without objection.

The documents and information now sought by the instant motions, to which defendants do object, concern the period between June 1968 and April 1969 and relate to what plaintiff refers to as "the abandonment of the apparently abortive 1968 proceeding and the resumption of what appears to have been an almost identical proceeding in 1969."

The Court has carefully inspected *in camera* the documents in question which were submitted to the Court for that purpose by defendants' counsel in accordance with the established practice in this Circuit. Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 553, 558 (2 Cir. 1967); Bourget v. GEICO, 48 F.R.D. 29 (D.Conn.1969), petition for writ of mandamus denied by Court of Appeals on December 15, 1969; 4 Moore's Federal Practice ¶ 34.19[2], at 2538 (2d ed. 1968).

## COURT'S FINDING OF GOOD CAUSE AND RELEVANCE

Defendants do not object to production of the documents and information here sought on the ground of absence of a sufficient showing of good cause or on the ground of lack of relevance.

The Court hereby finds, based on its independent examination of the entire file and its *in camera* inspection of the documents in question, that the documents and information sought are relevant to the issues herein, applying the broad discovery connotation of relevance, Bourget v. GEICO, *supra*, at 34; and that plaintiff has made a sufficient showing of good cause to warrant disclosure of the documents and information here requested. Hickman v. Taylor, 329 U.S. 495 (1947); Republic Gear Co. v. Borg-Warner Corp., *supra*, at 557.

## DEFENDANTS' CLAIM OF PRIVILEGE

Defendants' sole ground of objection to the production of the documents and information sought is that they are "attorney-client privileged communications". By this, the Court understands defendants' position to be that communications regarding the Stolberg matter, prior to commencement of suit, between (a) Dr. Buley, certain members of the Board of Trustees for the State Colleges and the executive secretary of the Board of Trustees, on the one hand, and (b) an assistant attorney general of the State of Connecticut, on the other hand, constitute communications between clients and attorney which are privileged

and should be withheld from disclosure for all purposes in the pending litigation.

Counsel for defendants has not cited any authority squarely in point to support his claim of an attorney-client privilege under these circumstances. I find the analogy, referred to in the briefs on both sides, to the attorney-client privilege in the context of large corporations to be particularly unappealing here where the communications in question are between public officials regarding the propriety of administrative proceedings involving the denial of tenure and termination of employment of a member of the faculty of a state institution of higher education. See McCormick On Evidence § 92, at 185, and § 146, at 305–06 (1954).

If the communications here in question could be said to be within the scope of an attorney-client privilege, a serious question of waiver would be presented; for at least some of the communications at issue were disclosed beyond even the group claimed by defendants to constitute the "clients". See McCormick, *supra*, § 95.

Further, upon plaintiff's theory of the case, if the communications in question were part of a plan of concerted action (Dr. Buley having testified that ". . . there was a consortium between us", referring to himself and the executive secretary of the Board of Trustees, following a conference with the assistant attorney general) to deny plaintiff his constitutional right to procedural due process in connection with the termination of his employment, then ". . . [I]t is difficult to see . . . how the law can protect a deliberate plan to

defy the law and oust another person of his rights, whatever the precise nature of those rights may be." 8 Wigmore, Evidence § 2298, at 577 (McNaughton Rev. 1961).

## COURT'S STANDARD FOR DETERMINING EXISTENCE OF PRIVILEGE

In view of the dearth of authority to support defendants' claim that the communications here in question are within the scope of an attorney-client privilege and, if they were, the serious related questions as to the effectiveness of the privilege under the circumstances of this case, it seems to me that the interests of justice here call for the application of a standard long recognized as fundamental in determining whether there exists a privilege—call it what you will—against disclosure of communications.

Wigmore has stated the standard to which I refer as follows: "The *injury* that would inure to the relation [of confidentiality] by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation." (Emphasis that of the author) 8 Wigmore, Evidence § 2285, at 527 (McNaughton Rev. 1961).[1]

## APPLICATION OF STANDARD TO DOCUMENTS IN QUESTION

Measured against this standard, the Court's careful *in camera* inspection of the documents tendered by defendants makes it abundantly clear that defendants' claim of privilege with respect to these documents is insupportable. In

---

1. This concept, expressed in terms of competing public interests, has been stated somewhat differently:

"Disputes do arise from time to time as respects the relatively small portion of information which federal officials may seek to hold confidential. Involved in such controversies may be a clash of two highly important public interests—on the one hand, that of making available evidence needed for the rendition of justice in a particular case and, on the other, that of safeguarding the national security or protecting essential administrative, law enforcement or other governmental processes." Timbers & Cohen, Demands Of Litigants For Government Information, 18 U.Pitt.L.Rev. 687 (1957).

short, I am satisfied that there simply is no overriding governmental interest which would justify withholding these documents from disclosure in this particular case.

Thanks to the professional competence of counsel on both sides, the material upon which the Court is called to rule is quite brief and specific. Plaintiff's demand is confined to the seven documents or categories of documents set forth in his motion for production. Defendants' claim of privilege is confined to the portions of these documents bracketed in red—less than 10% of the 65 pages tendered for *in camera* inspection.[2]

The gist of the documents and information which defendants seek to withhold relates to the basis for an administrative appeal by a faculty member from an adverse tenure decision during the period of his probationary appointment, which was plaintiff's status at the time of both appeals involved in this action. Without intimating how the trial court should rule upon the admissibility of such documents and information, it is sufficient on the instant motions to note that they clearly meet the tests of relevance and good cause for discovery purposes; and defendants make no claim to the contrary.

Nor do defendants, in support of their claim of privilege, assert that withholding such documents and information is necessary to safeguard military or state secrets or to protect essential administrative, law enforcement or other governmental processes.

What the justification for defendants' claim of privilege boils down to here is that disclosure of the documents and information sought may inhibit state officials and employees in the future from freely consulting members of the staff of the state attorney general's office, particularly with respect to administrative appeal procedures for members of the faculties of state institutions of higher education. I find that justification for the claim of privilege here asserted to be far-fetched [3]; and certainly it is not sufficient to offset what I find to be the compelling need for the production of the documents and information here in question in order to render justice in this particular case.[4]

Counsel on both sides agree that the Court's ruling on plaintiff's motion for production will control plaintiff's motion to compel Dr. Buley to answer a deposition question. He accordingly is ordered to answer the question to which an objection has been interposed.

Defendants' counsel has requested, in the event the Court grants plaintiff's motions, that defendants be afforded four days within which to prepare a petition for writ of mandamus to preserve their rights. Such provision is included in the order below, without of course indicating any view by this Court as to the propriety of such review procedure.

## ORDER

ORDERED that:

(1) Plaintiff's motion for production of documents is granted.

(2) Plaintiff's motion to compel Dr. Buley to answer a deposition question is granted.

---

2. For convenience, the Court has directed the Clerk to mark the tendered documents Court Exhibits 1 through 6 for identification, corresponding to paragraphs 1 through 6 of plaintiff's motion for production; there is no objection to paragraph 7 of plaintiff's motion.

3. Far more likely, it would appear that what defendants really are seeking here is to withhold until trial documents and information believed by them to support their defense in this action. Of course that is precisely what the federal discovery procedure is intended to avert.

4. Cf. 8 Wigmore, Evidence § 2378, at 803 n. 16, and at 807 n. 23 ("Probably the best collection of arguments supporting a privilege for official information appears in a report of the SEC and in a brief filed by that agency in a case in 1955.")

(3) Court Exhibits 1 through 6 for identification, referred to in note 2, *supra* (upon the assumption they include all documents called for in paragraphs 1–6 of plaintiff's motion for production), shall be lodged with the Clerk of this Court forthwith and by him shall be sealed and impounded, subject to paragraphs (6) and (7) of this order. In the event of mandamus or other review proceedings, the Clerk shall transmit said sealed exhibits to the Court of Appeals.

(4) Defendants shall lodge with the Clerk of this Court, not later than June 3, 1970, the documents called for in paragraph 7 of plaintiff's motion for production; they shall be marked Court Exhibit 7 for identification; but they need not be sealed and impounded, since no objection has been made to their production.

(5) Subject to paragraph (7) of this order, Dr. Buley, not later than June 8, 1970, shall serve and file a written answer to the deposition question, "What did he say?", propounded to him on February 10, 1970.

(6) Subject to paragraph (7) of this order, any time on or after June 8, 1970, plaintiff may inspect and copy or photograph (at plaintiff's expense), in the office of the Clerk of this Court, the documents referred to in paragraphs (3) and (4) of this order; and the Clerk is authorized to unseal and unimpound Court Exhibits 1 through 6 for identification at that time.

(7) If defendants, not later than Friday, June 5, 1970, at 2 P.M., shall serve and file in the United States Court of Appeals for the Second Circuit a petition for a writ of mandamus and other necessary papers seeking review of the instant order and shall diligently prosecute such petition pursuant to Rule 21, Fed.R.App.P., and pursuant to all orders of the Court of Appeals, then in that event compliance with paragraphs (5) and (6) of this order is stayed until the fifth (5th) day after the date of the order of the Court of Appeals disposing of said petition for a writ of mandamus.

(8) The Clerk of the District Court is hereby authorized on behalf of the undersigned judge to accept service of any mandamus papers required to be served upon the undersigned pursuant to Rule 21(a) and (b), Fed.R.App.P.