MAGNALEASING, INC.,
Plaintiff-Judgment
Creditor,

v.

STATEN ISLAND MALL, Blackfriars Realty Corp. and Tottenham Realty Corp.,
Defendants-Judgment Debtors.

No. 74 Civ. 5593 (LFM).

United States District Court,
S. D. New York.

Nov. 28, 1977.

Keane & Butler by Thomas A. Butler, Stuart L. Potter, Lon S. Bannett and P. Michael Madden, New York City, for plaintiff-judgment creditor.

Marshall, Bratter, Greene, Allison & Tucker by Jeffrey Newman, New York City, for defendants-judgment debtors.

Wien, Lane & Malkin by Robert A. Machleder, New York City, for Intervenor, Chase Manhattan Mortgage and Realty Trust.

## OPINION

MacMAHON, District Judge.

On December 19, 1974, plaintiff Magnaleasing, Inc. brought this diversity suit, seeking damages and rescission of a lease agreement between plaintiff and defendant Staten Island Mall (the "Mall"). The Mall is a joint venture between defendants Blackfriars Realty Corp. ("Blackfriars") and Tottenham Realty Corp. ("Tottenham"). Feist & Feist ("Feist"), not joined as a defendant, was the developer of the Mall and acted as its managing and leasing agent.

After trial without a jury, we rendered judgment for the plaintiff, finding that defendants had made material misrepresentations with respect to occupancy levels, amount of tax rent, and amount of common area charges. Rescission was granted, and after reference of the damages question to a Special Master, damages of $156,769.99, plus interest, were awarded. *Magnaleasing, Inc. v. Staten Island Mall*, 428 F.Supp. 1039 (S.D.N.Y.), *aff'd per curiam*, 563 F.2d 567 (2d Cir. 1977).

During the pendency of the instant litigation and before plaintiff could satisfy its judgment, defendants encountered problems on another front. Chase Manhattan Mortgage and Realty Trust ("Chase"), a real estate investment trust which held mortgages on defendants' shopping mall and land, brought an action against defendants in a New York state court to foreclose the mortgages. After motions to dismiss were denied, defendants and Chase entered into a settlement agreement under which the Mall properties and certain intangibles were transferred to Chase, and judgments in the foreclosure actions were entered against defendants. In turn, Chase paid certain monies to Feist and agreed to discontinue a shareholders' derivative suit which Chase had instituted as a shareholder of Tottenham against certain Tottenham officers and directors. The settlement agreement also contained a "confidentiality" clause, which stated:

> "[T]his Agreement shall not be filed by any party hereto in any court or with any public office or agency, nor shall it be disclosed to third parties or made public except (a) pursuant to direction of a court having proper jurisdiction. . . ."

Plaintiff now seeks discovery in aid of its federal judgment under Rule 69(a), Fed.R.Civ.P. Specifically, plaintiff moves for an order, pursuant to Rule 37, Fed.R.Civ.P., compelling production of the settlement agreement between defendants and Chase. See Rule 34, Fed.R.Civ.P.[1] It is suggested that the settlement involved improper transfers of assets to and from defendants and that production of the agree-

---

[1] Although there was once some doubt as to whether Rule 34 document production would be available to judgment creditors, see *M. Lowenstein & Sons v. American Underwear Mfg. Co.*, 11 F.R.D. 172 (E.D.Pa.1951); *United States v. McWhirter*, 376 F.2d 102 (5th Cir. 1967), the 1970 amendment to Rule 69(a) quite clearly entitles a judgment creditor to utilize the full panoply of federal discovery measures, *see* Rules 26–37, Fed.R.Civ.P., including production of documents under Rule 34. *See* Note of the Advisory Committee, Rule 69, Fed.R.Civ.P.; 7 J. Moore, Federal Practice ¶ 69.05[1], at 69–28 (2d ed. 1975).

ment would aid plaintiff in locating defendants' assets.

## RELEVANCE OF THE SETTLEMENT AGREEMENT

In pertinent part, Rule 69(a), Fed.R. Civ.P., provides:

"In aid of the judgment or execution, the judgment creditor or his successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held."

The rule authorizes discovery by a judgment creditor for the purpose of discovering any concealed or fraudulently transferred assets. The scope of discovery, however, is circumscribed by this purpose. Accordingly, the settlement agreement at issue here is relevant and discoverable only insofar as it relates to the existence or transfer of defendants' assets. *Caisson Corp. v. County West Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa.1974); *Monticello Tobacco Co. v. American Tobacco Co.*, 12 F.R.D. 344, 345 (S.D.N. Y.), *aff'd on other grounds*, 197 F.2d 629 (2d Cir.), *cert. denied*, 344 U.S. 875, 73 S.Ct. 168, 97 L.Ed. 678 (1952); 7 J. Moore, Federal Practice ¶ 69.05[1], at 69–29 (2d ed. 1975).

After in camera inspection of the settlement agreement, we find the following portions to be relevant:

1. Article 1, ¶ B.
2. Article 1, ¶ D.
3. Article 1, ¶ F.
4. Article 3, ¶ A.
5. Article 3, ¶ B.

6. Article 3, ¶ E.
7. Article 4, ¶ A(v).
8. Article 4, ¶ C.
9. Exhibit K.
10. Article 5.
11. Article 6.

These portions of the agreement describe various transfers of assets by, or to, the defendants, including the transfer of the Mall properties to Chase, and the other consideration exchanged by defendants and Chase, upon settlement of the foreclosure actions. Further, Article 3, ¶ B, listed above, relates to Chase's agreement to discontinue a shareholders' derivative suit brought on behalf of Tottenham, a suit which might theoretically have yielded a recovery for the benefit of Tottenham.

■ Taking an appropriately liberal view of the standards of relevance applicable in discovery proceedings, *United States v. International Business Machines Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y.1974); *Mallinckrodt Chem. Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 353 (S.D.N.Y.1973); *LaChemise Lacoste v. Alligator Co.*, 60 F.R.D. 164, 170–71 (D.Del.1973), we conclude that the enumerated portions of the settlement agreement may indeed give plaintiff useful and necessary information concerning the whereabouts of property which might satisfy the judgment. *See Caisson Corp. v. County West Bldg. Corp., supra*, 62 F.R.D. at 333.[2]

■ Articles 5 and 6 are relevant even though they relate solely to monies paid by Chase to Feist in connection with the settlement. To be sure, Feist is neither a defendant nor a judgment debtor in this action,

---

**2.** Rule 69(a) permits the judgment creditor to obtain discovery "in the manner provided in these rules *or in the manner provided by the practice of the state in which the district court is held.*" (Emphasis added.) The relevant New York procedures, however, provide plaintiff with discovery rights no broader than those afforded by the liberal federal provisions. *See* New York CPLR § 5223. Like the federal practice, post-judgment disclosure in New York is circumscribed by a requirement that the inquiry focus upon locating the assets of the judgment debtor. 6 J. Weinstein, H. Korn & A.

Miller, New York Civil Practice ¶ 5223.05, at 52–319 (1976) (hereinafter "Weinstein, Korn & Miller"); CPLR § 5223 Supplementary Practice Commentaries (Supp.1976); *cf. Gorea v. Pinsky*, 50 A.D.2d 713, 374 N.Y.S.2d 879 (1975), *affirming*, 80 Misc.2d 139, 362 N.Y.S.2d 771 (Sup.Ct.1974). Since all provisions of the settlement agreement going to that issue will be produced under the federal rules, New York law would provide plaintiff with no more than can be obtained under Rule 69(a), Fed.R.Civ.P. Accordingly, we pursue the state law inquiry no further.

and disclosure concerning the assets of a non-party is generally not contemplated by Rule 69(a). *Burak v. Scott*, 29 F.Supp. 775 (D.D.C.1939); 12 C. Wright & A. Miller, Federal Practice and Procedure § 3014, at 72 (1973); *Caisson Corp. v. County West Bldg. Corp., supra*, 62 F.R.D. at 334 (dictum).

This rule, however, is not to be applied mechanically. Discovery has been permitted against a non-party where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them. *Caisson Corp. v. County West Bldg. Corp., supra*, 62 F.R.D. at 335; *Davis Accoustical Corp. v. Skulnik*, 131 N.J.Super. 87, 328 A.2d 633, 635 (App. Div.1974) (under a rule of court substantially identical to Rule 69).

■ In this case, Feist is the controlling shareholder of both Tottenham and Blackfriars, and the same individuals control Feist and the judgment debtors. Chase extended cash consideration to Feist upon the transfer of the Mall properties, and Feist prosecuted and financed defendants' appeal on the merits of the instant litigation. It is alleged that the payments to Feist were made "collusively," in an attempt "to strip defendants of any assets [which might] satisfy the judgment." (Plaintiff's Brief, p. 9.) These allegations are sufficient to permit discovery on the narrow issue of the consideration received by Feist in connection with the transfer of the Mall properties. Plaintiff's showing raises doubts about the propriety of the transfers, and plaintiff should be permitted further exploration. Additionally, the relationship between Feist and the judgment debtors satisfies us that plaintiff seeks production of the settlement agreement in

good faith and not merely to harass Chase or Feist. *See Caisson Corp. v. County West Bldg. Corp., supra*, 62 F.R.D. at 335.

■ Our conclusion is not altered by the presence of the "confidentiality" clause. Such a clause in an agreement between defendants and Chase cannot preclude plaintiff from making a full inquiry into the assets of the judgment debtors. The scope of plaintiff's rights cannot be governed by agreement of his adversaries.

Furthermore, the mere "fact that sensitive information is involved in litigation gives a party neither an absolute nor automatic right to have the discovery process hindered." *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 409 (N.D.N.Y.1973). When confronted with material which is relevant to plaintiff but embarrassing or prejudicial to Chase, the court must strike a balance between the competing concerns. *Johnson Foils, Inc. v. Huyck Corp., supra*, 61 F.R.D. at 409; *Carter Products, Inc. v. Eversharp, Inc.*, 360 F.2d 868, 872 (7th Cir. 1966). In this case, a balance is effected by limiting disclosure to those portions of the settlement agreement which refer specifically to transfers of assets between defendants and Feist. Any prejudice resulting to Chase from such limited disclosure is outweighed by plaintiff's need for information. *Cf. United States v. International Business Machines Corp., supra*, 66 F.R.D. at 219. Moreover, as discussed *infra*, we leave open the possibility of a protective order further regulating discovery.

## WORK PRODUCT AND ATTORNEY–CLIENT PRIVILEGE CLAIM

■ Chase argues further that the above-specified portions of the settlement agreement, although relevant, are nonetheless exempt from discovery under the "work-product" doctrine[3] or under an at-

---

3. Chase has noted that portions of the settlement agreement relate to tactics and strategies to be utilized by Chase and the defendants in defending actions brought against them by other Mall tenants. It is argued that these provisions of the agreement were drafted "in anticipation of litigation" with those other tenants and should be protected with qualified work-product immunity under Rule 26(b)(3). *See*

*Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551, 554–55 (N.D.Ill.1964); *Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26, 43–45 (D.Md.1974). However, since we have not ordered production of these portions of the agreement, we deem this argument to be moot. We address Chase's work-product argument only insofar as it relates to the portions of the agreement which we have ordered produced.

torney-client privilege. The work-product doctrine is codified in Rule 26(b)(3), Fed.R. Civ.P., which provides:

"[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

We believe the above-specified portions of the agreement were not prepared "in anticipation of litigation" with the other tenants. Rule 26(b)(3) and the doctrine it embodies were designed to safeguard documents prepared for use in litigation or a trial. The doctrine protects the integrity of the adversary system and seeks to avoid the demoralization which would result from requiring an attorney to defuse in advance of trial the tactical advantages achieved by diligent preparation. *Cf. Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

Where, however, the document at issue relates only to assets exchanged on the settlement of a case, the policies behind the work-product doctrine are not offended by disclosure. Disclosure of such a document reveals no information which could be used in trying the case; it unearths no trial tactics or strategies; it permits no demoralizing inspection of an adversary's litigation files. Far from being a document prepared in anticipation of litigation with the other tenants, the settlement agreement, insofar as we have ordered disclosure, was designed merely to terminate the already-pending foreclosure actions short of trial. Since the relevant portions of the settlement agreement in no way relate to trial tactics or material to be used in the defense of the actions brought by the other tenants, they were not protected by the qualified immunity of Rule 26(b)(3).[4]

■ Nor are the relevant portions of the settlement agreement protected by an attorney-client privilege. Under New York CPLR § 4503(a) and the common law of New York,[5] confidential communications between an attorney and his client are privileged and protected from discovery. *See generally* 5 Weinstein, Korn & Miller, § 4503.01 et seq. (1974). It is Chase's contention, however, that the privilege, as recognized in New York, reaches communications among the attorneys of co-defendants, and that the settlement agreement is insulated from discovery because it embodies communications concerning joint defenses of Chase and defendants to actions brought by other tenants. Assuming New York would recognize such a privilege,[6] the facts

---

4. In view of this disposition, we need not reach the more difficult question whether documents prepared "in anticipation of litigation" with the other tenants would retain their work-product immunity when sought in this proceeding. *See Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551 (2d Cir. 1967); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730 (4th Cir. 1974), *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975); 4 J. Moore, Federal Practice ¶ 26.64[2], at 26–415–16 (2d ed. 1976); C. Wright, Federal Courts § 89, at 409 & n.25 (1976).

5. In a diversity case, the scope of an evidentiary privilege is determined in accordance with state law, both at trial and in discovery proceedings. Rule 501, Fed.R.Evid.; *Republic Gear Co. v. Borg-Warner Corp., supra*, 381 F.2d

at 555 n.2 (attorney-client privilege); *Massachusetts Mut. Life Ins. Co. v. Brei*, 311 F.2d 463, 465–66 (2d Cir. 1962) (physician-patient privilege); *Dixon v. 80 Pine Street Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975) (privilege of "confidentiality in the public interest"); 4 J. Moore, Federal Practice ¶ 26.60[1], at 26–227; ¶ 26.60[7], at 26–255–60 (2d ed. 1976).

6. Counsel have not cited, and our own research has not disclosed, any New York cases directly in point. *But see* 5 Weinstein, Korn & Miller, *supra*, at 45–125. Our assumption that the New York courts would recognize the privilege obviates the necessity for making the often treacherous *Erie*-guess concerning the manner in which the New York courts would resolve this issue.

here fall short of bringing the settlement agreement within such a privilege.

■ Communications among the attorneys for co-defendants are privileged only if the communications are designed to further a joint or common defense. *Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965) (privilege applies "to the extent that [communications] . . . are intended to facilitate representation in possible subsequent proceedings."); *Continental Oil Co. v. United States*, 330 F.2d 347, 348–49 (9th Cir. 1964); *Matter of Grand Jury Subpoena Duces Tecum Dated Nov. 16, 1974*, 406 F.Supp. 381, 389, 391 (S.D.N.Y.1975); *Schmitt v. Emery*, 211 Minn. 547, 2 N.W.2d 413, 417 (1942); *Chahoon v. Commonwealth*, 62 Va. (21 Gratt.) 822, 841–42 (1871); Note, *The Attorney-Client Privilege in Multiple Party Situations*, 8 Colum.J.L. & Soc.Prob. 179, 186 (1972); Note, *Waiver of The Attorney-Client Privilege on Inter-Attorney Exchange of Information*, 63 Yale L.J. 1030, 1035 & n.34 (1954).

In the instant case, the settlement agreement, insofar as we have ordered disclosure, relates merely to the transfer of assets between defendants and Chase. The relevant portions embody no communications concerning the manner or substance of the parties' joint or common defense of the actions brought by the other tenants. In no way were they intended or designed to contribute to or further such defense. Therefore, even assuming that New York law would recognize a privilege for communications among the attorneys of co-defendants, the relevant portions of the settlement agreement would not fall within the privilege.

## PROTECTIVE ORDER

Alternatively, Chase has sought a protective order prescribing the conditions under which the settlement agreement would be produced. *See* Rule 26(c), Fed.R.Civ.P. Chase suggests that unfettered disclosure and use of the agreement would prejudice its bargaining position in attempting to settle suits brought by other tenants of the Mall. Counsel for plaintiff has agreed to production pursuant to a reasonable protective order. We suspect, however, that this issue may now be moot given the very limited production we have allowed.

Accordingly, the motion to compel production of the settlement agreement is granted with respect to the following portions of that agreement:

1. Article 1, ¶ B.
2. Article 1, ¶ D.
3. Article 1, ¶ F.
4. Article 3, ¶ A.
5. Article 3, ¶ B.
6. Article 3, ¶ E.
7. Article 4, ¶ A(v).
8. Article 4, ¶ C.
9. Exhibit K.
10. Article 5.
11. Article 6.

The parties may, if they desire, settle and submit a protective order within ten (10) days. In all other respects, the motion is denied.

So ordered.

Further, this case presents no occasion to outline the parameters of the concept of a "joint" or "common" defense within the meaning of the privilege. We will assume that Chase and defendants were sufficiently aligned in interest to satisfy this requirement.

Nor need we analyze the circumstances under which the settlement agreement was negotiated. In view of our holding, it is irrelevant whether the communications were indeed between the attorneys or, as plaintiff suggested, were between the parties themselves. We will assume that the communications were between the attorneys for the co-defendants. We note, moreover, that plaintiff may be pointing to a difference without a distinction. The courts which have dealt with this issue appear not to have drawn a distinction based on whether information was exchanged by the clients or by the attorneys. See Note, *The Attorney-Client Privilege in Multiple Party Situations*, 8 Colum. J.L. & Soc.Prob. 179, 184–85 (1972) (citing cases).