UNITED STATES of America, Plaintiff,

v.

Vito CARIELLO, Defendant.

Crim. A. No. 78–297.

United States District Court,
D. New Jersey.

April 15, 1982.

Maryanne Desmond, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Fredric J. Gross, Haddonfield, N. J., for defendant.

## OPINION

GERRY, District Judge.

Defendant seeks to vacate his sentence on Counts 1 and 2 on the grounds that the Government failed to prove a Racketeer Influenced and Corrupt Organizations (RICO) violation and because of prejudice caused by the submission of the RICO counts to the jury, which prejudice spilled over into the jury's consideration of the substantive counts. Defendant also seeks a new trial on all counts claiming a denial of his Sixth Amendment right to testify and prejudice inherent in the use of special verdict forms by the jury which resulted in a finding of guilt by association and an inadequate consideration by the jury of the essential mental elements of the crimes charged. Defendant also contends that he is entitled to a new trial on the ground that the prosecution relied on inadmissible hearsay. Finally, defendant asks the court to vacate his sentence because of the use of the special interrogatory forms and because

there is no evidence of clear nor equivocal proof of defendant's guilt.

Defendant has engaged in extensive briefing of all grounds.

The court will address each of defendant's contentions individually.

### 1. *Proof of RICO Charges.*

Defendant argues that in order to make out an offense under RICO the Government must prove that the affairs of an "enterprise" were conducted through a pattern of racketeering activity. Defendant contends that the use of the term "through" in the statute requires the Government to show that the affairs of the enterprise were advanced or profited by virtue of the racketeering activity. Defendant relies on *U. S. v. Webster*, 639 F.2d 174, 182–86 (4th Cir. 1981) and *U. S. v. Nerone*, 563 F.2d 836 (7th Cir. 1977).

While the original opinion of the court in *Webster* appeared to require a benefit to the charged enterprise in order for the statutory provisions to apply, the Fourth Circuit, as defendant has acknowledged to the court, has subsequently abandoned its view. *U. S. v. Webster*, 669 F.2d 185 (1982). In rejecting its earlier position, the court stated that there was no basis for limiting the statute by reading "conduct" to mean "promote" or benefit since even businesses out to make money may conduct their affairs for other purposes. Moreover, the court recognized that the problem of requiring a benefit to the enterprise surfaces in cases where the "enterprise" is governmental in nature and almost universally not organized for profit. Rather than require a benefit, the proper inquiry in a RICO case should be whether the affairs of the enterprise were carried on, repeatedly or evenly, through a pattern of racketeering activity. The *Webster* court found such a requirement satisfied where the evidence at trial established that, by means of the telephone company's call-forwarding service, telephone calls to the individual defendant's homes were frequently directed to the 1508 Club (the charged enterprise). In addition, the club's

facilities were used to accept and relay narcotic related messages, and on at least one occasion a club employee was asked by defendant Webster to provide club-owned drinks to one of his customers who was waiting for drugs to be brought. Thus, "the evidence which the Government has offered indicated that the facilities of the club were regularly made available to and put in the service of defendant's drug dealing business." *Id.* at 2355.

Defendant also relies on *U. S. v. Nerone, supra,* for the proposition that a benefit must accrue to the enterprise as a result of the racketeering activity. While the court in *Nerone* observed that the Government had failed to show that proceeds from an illegal gambling operation were invested in the enterprise (a corporation operating a mobile home park) or in any way channeled into the corporation, it nowhere holds that the enterprise must directly profit from the racketeering activity. On the contrary, the court's observation that the Government's case demonstrated a "total want of proof of connection between the racketeering activities and the affairs of the corporation" would appear to indicate that the statute merely requires a sufficient nexus between the enterprise and the alleged illegal activities.

Such a reading of the opinion is supported by the subsequent decision of the Seventh Circuit in *U. S. v. Lee Stoller Enterprises, Inc.,* 652 F.2d 1313 (1981), in which the court held that a public body or entity could constitute an "enterprise" under RICO. Since, as the Fourth Circuit on rehearing in *Webster* pointed out, an enterprise which is governmental in nature is almost universally not organized for profit, the inclusion of a sheriff's department within the meaning of RICO enterprises establishes the Seventh Circuit's position that benefit or profit to the enterprise as a result of the racketeering activity is not a statutory requirement.

Defendant has indicated to the court that his position on the benefit requirement is bolstered by the recent decision of the Sixth Circuit in *U. S. v. Thompson,* 669 F.2d 1143 (1982), in which the court excluded from the scope of the term "enterprise" in RICO cases governmental enterprises.

Defendant's reliance is misplaced. First of all, the Sixth Circuit decided to exclude governmental entities from RICO coverage not because the statute requires a profit or benefit to the enterprise but rather held that because the *remedy* provisions of the statute could not be applied by the courts to such enterprises, they would be excluded. More importantly, defendant's reliance on *Thompson* ignores the fact that in *U. S. v. Frumento,* 563 F.2d 1083 (3d Cir. 1977), *cert. denied sub nom. Millhouse v. U. S.,* 434 U.S. 1072, 98 S.Ct. 1256, 55 L.Ed.2d 775 (1978), the Third Circuit expressly rejected defendant's argument that the term "enterprise" was never intended to include governmental organizations. The court specifically addressed the concern of the Sixth Circuit in *Thompson* regarding the remedy provisions. The court reasoned that in the Organized Crime Act Congress was not so much concerned with limiting the protective and remedial features of the Act to business and labor as it was with reducing the insidious capability of persons in organized crime to infiltrate the American economy. Thus, Congress was concerned with enlarging the number of tools with which to attack racketeering and did not confine its scrutiny to specific areas of economic activity. The court found neither articulation nor evidence of intention by Congress to exclude governmental entities from the reach of the statute. Accordingly, it held that a state agency charged with the responsibility of enforcing the tax laws on an interstate industry engaged in the importation of cigarettes from points outside the state constituted an enterprise within the meaning of 18 U.S.C. § 1961. *Accord, U. S. v. Welch,* 656 F.2d 1039 (5th Cir. 1981).

While the Third Circuit has never directly addressed the question of whether the statute requires that the enterprise conducted through a pattern of racketeering activity be profited by that activity, this court is confident that the Circuit would reject such a contention. The fact that the court in

*Frumento* construed the statute expansively is consistent with an approach which does not require profit or benefit to the enterprise in order for the conduct to be prohibited. Moreover, the Circuit has never applied the "enterprise" requirement in a limited fashion. *See U. S. v. Bacheler*, 611 F.2d 443, 450 (3d Cir. 1979); *U. S. v. Herman*, 589 F.2d 1191 (3d Cir. 1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979); *U. S. v. Vignola*, 464 F.Supp. 1091 (E.D.Pa.1979), *aff'd mem.*, 605 F.2d 1199 (3d Cir. 1979), *cert. denied*, 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980). *See also, U. S. v. Provenzano*, 620 F.2d 985 (3d Cir.) *cert. denied*, 449 U.S. 899, 101 S.Ct. 267 (1980).

I also find persuasive the reasoning of the Second Circuit in *U. S. v. Scotto*, 641 F.2d 47 (2d Cir. 1980). In *Scotto*, the defendants were the president and the secretary-treasurer (later executive vice president) of an International Longshoremen's Association local. Defendants also held offices in the International Union. The Government charged the defendants with operating the affairs of the union (the charged enterprise) through a pattern of racketeering activity. Specifically, the Government's evidence established that defendants individually and jointly received illegal labor payoffs (kickbacks for keeping labor peace) from 1975–1979 from six separate waterfront businesses employing ILA members. *Scotto* contended on appeal that an insufficient nexus between the predicate misconduct and the conduct of the enterprise existed, and that the trial court should have charged the jury that the predicate acts had to affect the affairs of the ILA in its essential functions. The Second Circuit rejected this approach and held that "one conducts the activities of an enterprise through a pattern of racketeering when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise." *Id.* at 54.

The conduct of the defendants in *Scotto*, the manner in which they conducted union affairs is factually indistinguishable from the conduct of the defendant herein in his operation of the union funds. All the defendants, including Cariello, by virtue of their control over the funds' investments were able to exert pressure over various bank personnel in order to obtain unsecured loans and other payments. As the Third Circuit stated in the appeal of this matter (*U. S. v. Palmeri*, 630 F.2d 192 (1980)), the trustees of the funds had adopted a program of concentrating the assets of the funds into fewer and larger certificates of deposit and had vested the authority for implementation of the program in Cariello. The Government introduced evidence of a series of transactions wherein Palmeri would suggest the possibility of large investments to bank officials, ask for and usually obtain loans for himself or others, and soon thereafter Cariello would contact the officer to inquire about interest rates and issue a check on one of the union's funds bearing his signature. Such conduct certainly satisfies the requirements of the statute as interpreted by the Second Circuit in *Scotto*.

Accordingly, defendant's contention that his convictions of the RICO counts must be vacated and the charges dismissed due to lack of the requisite benefit to the enterprise represents an unacceptable interpretation of the statute and must be rejected.

**2.** *Substantive Counts.*

Defendant contends that the Government's failure to satisfy the elements of proof for a RICO conspiracy violation (on defendant's no profit to the enterprise theory) prejudiced him on the substantive counts and resulted in a finding of guilt by association.

The court has previously rejected defendant's contention that the submission of the RICO charge to the jury was error, and that the Government's proofs failed to satisfy its burden of introducing evidence that defendant conducted the affairs of the fund through a pattern of racketeering activity. Since the predicate of defendant's argument lacks merit, the court must reject

defendant's dependent contention that he has suffered prejudice.

### 3. *Defendant's Right to Testify.*

■ Defendant contends that he was deprived of his constitutional right to testify on his own behalf because a co-defendant insisted on taking the stand if defendant Cariello testified. Because defendant's case was not severed from that of the other defendants, he was unable to exercise his right to testify.

Defendant acknowledges that he did not move to sever his case from that of the other defendants during the course of trial. However, he claims that he was precluded from doing so on the ground of attorney-client privilege. In addition, defendant argues that his presentation of this claim in the context of this motion constituted his first opportunity to raise since the claim was not set forth in the record and thus could not be the subject of appeal.

Defendant does not explain why such a claim was not the subject of a motion for a new trial under Rule 33.

Nor does defendant support his contention that a co-defendant's attorney-client privilege extends to any of the co-defendants and co-defendant's attorney's voluntary disclosures made to co-counsel in the context of defending at a joint trial with any citation of authority.

■ Defendant's position suffers from several shortcomings. First of all, under defendant's interpretation of the law of attorney-client privilege, it would appear that any statements made to an attorney are protected. However, it is fundamental that the privilege only applies to confidential communications, *U. S. v. Kovel*, 296 F.2d 918 (2d Cir. 1961); *Dorothy K. Winston v. Town Heights Dev., Inc.*, 376 F.Supp. 1214 (D.C.1974), which are intended as confidential, *Dorothy K. Winston, supra.* Moreover, a privileged communication is subject to perpetual protection, does not cease with the termination of the suit, and can only be waived by the client himself. 3 Wharton *Criminal Evidence* (13th Ed.) § 560. Thus,

it is unclear how the communication made during the course of trial could be confidential at that time but is no longer so. Defendant has not obtained a waiver from his co-defendants permitting him to reveal the communication at this time. Such an omission renders defendant's contention that it could not reveal Palmeri's intention to testify during the course of trial suspect and of questionable validity. If the communication was privileged, as defendant contends, not only could it not be revealed during trial, it could not even be revealed at this time.

■ Defendant's presumption that any statement made to counsel for a co-defendant during the course of trial is privileged is likewise without merit. Communications among attorneys and co-defendants are privileged only if the communications are designed to further a joint or common defense. *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559 (S.D.N.Y.1977). Defendant has submitted the affidavit of his trial counsel which reveals the motivations which prompted Palmeri's statement. Palmeri did not communicate his desire to testify as part of a joint strategy of all defendants but simply in furtherance of his own individual defense. Moreover, nothing in the affidavit of counsel reveals any circumstances from which it could be concluded that Palmeri intended the communication to be confidential.

Even assuming that the statement is protected, defendant offers no explanation for his failure to seek a waiver from Palmeri during trial or to attempt to reveal to the court in the absence of the Government the impediment to Cariello's exercise of his right to testify.

Thus, defendant's explanations for his failure to seek severance at an earlier occasion do not constitute cause within the meaning of F.R.Crim.P. 12. As the court has pointed out, the attorney-client privilege is as much a bar now as it was during trial. Defendant has not sought a waiver from Palmeri now, nor did he do so then. Moreover, defendant's use of the privilege to excuse his waiver is without merit

whereas here the privilege is of highly questionable application, and defendant has not demonstrated on the basis of any evidence in the record that the privilege applies.

■ Defendant's contention that he was denied his Sixth Amendment right to testify must also be rejected on the ground that defendant has failed to establish a constitutional denial. Defendant has submitted the affidavit of his trial counsel in support of his motion. However, rather than reveal that the court or the prosecution prevented him from testifying, the affidavit demonstrates that defendant's decision not to testify was strategic. Counsel learned that the co-defendant Palmeri intended to testify if any other defendant did. Counsel had planned to have Cariello testify and in furtherance of that objective had moved successfully to suppress Cariello's 1964 conviction. After interviewing Palmeri as to the substance of his testimony, counsel determined that, despite the fact that Palmeri would give testimony exonerating Cariello, which testimony was consistent with the story Cariello himself would tell, the major portion of his testimony would be incredible to the jury, causing them to reject the whole testimony, including that favorable to Cariello. Because of the potential for damage of Palmeri's testimony, counsel decided it would be better not to have Cariello testify. Thus, counsel made a strategy decision to proceed in a manner perceived to be most favorable under the circumstances to his client. The decision was clearly the result of reasoned decision-making. Accordingly, defendant's failure to testify was not the result of a constitutional deprivation.

■ Defendant argues that if the court agrees with the Government's position that the Sixth Amendment claim should have been raised during the course of trial or on appeal, then the court should construe the failure to raise the issue the result of ineffectiveness of counsel. Such an argument attempts to make an end run around the question of waiver. Since the court has concluded that counsel's decision not to have Cariello testify at trial was the result

of reasoned decision-making and since such performance is all that is required, *see Moore v. United States*, 432 F.2d 730 (3d Cir. 1970); *U. S. ex rel. Johnson v. Johnson*, 531 F.2d 169 (3d Cir.), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976), defendant cannot make out a claim for ineffective counsel. Moreover, the court has concluded that defendant's failure to raise the question of severance during the course of trial or immediately thereafter resulted in a waiver of his right to seek severance under Rule 12. Therefore, appellate counsel's inability to convince the court that cause exists to permit raising the issue at this time is irrelevant to the court's rejection of defendant's position. Thus, the effectiveness or ineffectiveness of appellate counsel is of no moment.

Finally, if the court were to entertain defendant's argument, it would have to open to all defendants in a multi-defendant criminal trial a new avenue of collateral attack. So long as the defendant did not testify, he could later claim that he was unable to and should have been severed and therefore must now be permitted a new trial. The court is unwilling to recognize such a universal form of attack on the facts of this case.

In that last few days before the argument of this matter, defendant had provided the court with the affidavit of defendant and a copy of portions of defendant's grand jury testimony to illustrate the fact that defendant's testimony would have tended to exculpate him. The substance of the testimony which defendant would have given at trial is irrelevant to the court's determination where, as here, counsel made a reasoned decision that his client should not take the stand. Thus, despite the equitable appeal of defendant's argument, the court need not reach it.

*4. Special Interrogatories.*

■ Defendant contends that the submission of the RICO charges to the jury on special interrogatories was error and uniquely prejudiced Cariello. Defendant raised these claims on appeal, and they

were rejected by the Third Circuit. While defendant concedes the general rule that a matter decided adversely to a defendant on direct appeal cannot be relitigated under § 2255, defendant contends that the instant case presents exceptional circumstances and can be considered under the court's discretionary powers.

The exceptional circumstances, according to defendant, arise out of the fact that the Court of Appeals allegedly "misread the record on the question of special verdicts." (Defendant's reply brief at 16.) Defendant makes much of the fact that the Circuit failed to acknowledge that an objection to the use of special verdicts had been registered, and the court thus stated that the question was not properly before it on appeal.

Defendant's position suffers from two deficiencies. First of all, although the court on appeal did conclude that the issue of special interrogatories was not properly before it, it nevertheless went on to consider the question and to hold adversely to defendant on it. In addition, the objection which defendant claims was made to the procedure was not made by defendant or his trial counsel. As the Court of Appeals noted in footnote 7 of the opinion, Mr. Fitzpatrick, counsel for defendant, only registered a general objection to submission of the indictment to the jury, which objection was renewed after the court indicated it would employ the special interrogatories. Moreover, Mr. Fitzpatrick stated that he did not object to the submission of a chart, such as that used in conjunction with the special interrogatories to the jury.

Nor does this court view the jury's verdicts in the special interrogatories suspect because of its finding against Cariello on the Anthony Wayne Bank loans. Defendant argues that no loan from that bank was obtained by Palmeri until after Cariello had deposited union funds with the bank, and that Cariello's deposit decision was wholly innocent. However, the evidence at trial suggested that Palmeri and Campisano met with the president of the Anthony Wayne Bank in the summer of 1973. At the meeting, the bank president solicited deposits and indicated his willingness to offer loans to union employees. After that meeting, in September, 1973, Cariello made his first deposit to the bank. Thus, based on the evidence, the jury could have and apparently did conclude that Cariello's deposit was influenced by or in response to the solicitation. Such a conclusion was bolstered by evidence that defendant Palmeri received a $5,000 unsecured loan one month after the deposit.

With regard to defendant's contention that the special verdict procedure deemphasized the mental elements and were particularly prejudicial to himself, such an argument was rejected by the Third Circuit, which held that the use of the procedure reminded the jury of the components of their decision. Nor is this court persuaded that the Circuit's reference to the jury's consideration of the racketeering acts the most crucial element renders its analysis of the special verdict procedure suspect. Certainly, the finding of two or more racketeering acts is its most crucial determination as a threshold proposition. Without such a finding, the statutory scheme is not triggered and further deliberation is unnecessary. To observe that such a determination is crucial in an indictment charging 46 separate acts of racketeering hardly represents a deemphasis of other essential elements. Nor in this court's view did the use of the special verdict result in such a deemphasis.

Defendant's principal basis for arguing in favor of this court's consideration of the special interrogatory issue is his view that the Third Circuit improperly misread the trial record and improperly held that the question was not properly before it on appeal. As noted previously, despite its position, the Circuit went on to consider the special interrogatory question and specifically rejected defendant's arguments. After first noting that special interrogatories are disfavored in criminal cases, the court stated that it had established no per se rule against them. In the instant case, because there were five defendants on trial on a 23 count indictment alleging 46 acts of racket-

eering and numerous other violations of federal law, the court concluded that special interrogatories were properly employed to decrease the likelihood of juror confusion and to aid the jury in concentrating on each specific defendant and the charges against him rather than incriminating one potentially innocent defendant solely on the basis of his association with the others. Defendant contends that the use of the interrogatories permitted a finding of guilt by association. However, the Third Circuit has already addressed and rejected such a contention. Nothing in the opinion of the Circuit indicates to this court that the Third Circuit would reach a different conclusion on this collateral attack. Therefore, the court's alleged failure to reach defendant's contentions on the merits of the appeal does not present this court with the kind of exceptional circumstances which would warrant a departure from case law that once a matter has been decided adversely to a litigant on direct appeal, it cannot be relitigated in a collateral attack under § 2255. *U. S. v. Natelli*, 553 F.2d 5 (2d Cir. 1977) (*per curiam*).

Nor does the Third Circuit's subsequent opinion in *U. S. v. Desmond*, 670 F.2d 414 (1982), represent, in this court's view, a change in the Third Circuit's approach to the question of special interrogatories. Although the court cited the *Palmeri* opinion on the procedural point, it did not reject its prior approval of the use of special interrogatories in the facts of that case. Therefore, this court will not reconsider the special interrogatory question decided adversely to defendant on appeal.

### 5. *Sufficiency of the Evidence.*

◼ Defendant contends that there was insufficient evidence of guilt and that his conviction must therefore be vacated. Defendant raised such a claim on appeal, and it was rejected by the Third Circuit. Thus, it cannot be relitigated under § 2255.

Defendant's contention that sufficiency can be raised collaterally is without merit since the case authority relied on by defendant, *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is an action brought under § 2254, the habeas corpus provision for state criminal defendants. *Jackson* simply holds that a defendant convicted in state court is entitled to a hearing on his sufficiency claim in a federal constitutional court. Since defendant has already had such a hearing on his direct appeal, the logic of *Jackson* does not pertain to him. The other case authorities cited by defendant: *Ingram v. U. S.*, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959); and *Direct Sales Co. v. U. S.*, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943), must also be rejected because they did not involve § 2255 proceedings.

Defendant also argues that the Third Circuit disregarded controlling Supreme Court precedent in evaluating the sufficiency of the evidence. Defendant's argument misconstrues the purpose of collateral relief under § 2255. It is not the function of this court to consider or to correct alleged errors of the Appellate Court.

◼ In counsel's letter of January 26, 1982, a new ground for § 2255 relief is raised. Defendant argues that, under the Third Circuit decision in *U. S. v. Friedland*, 660 F.2d 919 (3d Cir. 1981), § 1954 is violated if an investment in fact yields any private person a private advantage, without regard to whether the investment was the product of a bribe. This decision, in defendant's view, explains the Third Circuit's refusal to overturn his conviction on insufficient evidence. Defendant concedes that under such approach, "there is no question that the Government proved [that] Cariello fail[ed] to restrain the banks and his union brethren." However, defendant contends that, assuming *Friedland* was correctly decided, there is nothing in the text of § 1954 which could have given Cariello fair notice that he was obligated to prevent others from taking advantage of his deposit decisions. Thus, the conviction of defendant violated the constitutional proscription against ex post facto laws.

Defendant raises this argument for the first time in counsel's letter and has not pleaded it as a ground for relief, although the decision of the Third Circuit in *U. S. v.*

*Niederberger,* 580 F.2d 63 (3d Cir.), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978), should have given defendant notice of such a claim. However, defendant will argue that not until the decision in *Friedland* was he aware of the ex post facto problem in relation to § 1954. Therefore, the court will consider defendant's contentions.

▉ Defendant's characterization of the effect of *Friedland* is, to say the least, simplistic and potentially misleading. In *Friedland,* defendants were counsel to union funds. The statute provides:

> Whoever being ... counsel ... of any employee welfare benefit plan or employee pension benefit plan receives or agrees to receive or solicits any fee, kickback, commission, gift, loan, money or thing of value *because of* or *with the intent to* be influenced with respect to, any of his actions, decisions, or other duties relating to any question or matter concerning such plan ... shall be fined not more than $10,000 or imprisoned not more than 3 years, or both ....

Defendants in *Friedland* argued that, under the "because of" provision in the statute, they must be shown to have actually taken some action in return for the kickback. The court rejected the contention that a *quid pro quo* was a necessary element of the offense.

> So long as appellants were counsel to the Fund, and received the kickback (a) because of that status, which gave them at least ostensible power to exercise influence, or (b) with the purpose of exercising influence they either actually or ostensibly had over decisions regarding the Fund, then they need not be shown to have actually exercised such influence. If actual exercise of influence were a prerequisite to a violation, then anyone who could potentially influence a future decision concerning a pension plan would be free to solicit kickbacks so long as he ultimately took no action to influence the decision.

*Id.* at 926–927.

Nothing in the decision of the court in *Friedland* would condone imposition of liability on a defendant whose only conduct was his awareness that others had solicited bribes. Thus, defendant's contention that such imposition is not evident from the statutory language and unconstitutional is inapposite. The Third Circuit's discussion proceeds upon the assumption that the defendants *had received* a kickback. Moreover, there is no alteration of any statutory requirement, since both the conduct (solicitation, receipt) and the improper purpose set forth in the statute must be proved.

Since the court in *Friedland* did not hold that § 1954 imposes liability for failure to prevent the conduct of others, defendant's contention that the statute is unconstitutional is without merit. Defendant's arguments might have some merit if the only evidence against him at trial was that his union brethren had obtained loans at banks at which Cariello had made wholly independent deposits. However, the Government's proofs established that Palmeri and others contacted the banks *before* any deposits were made. A short time thereafter, defendant would call the banks and inquire as to the interest rate and would make a deposit. Based upon the evidence, the jury could have inferred that defendant was influenced in his decisions by the other defendants.

While defendant has contended in this proceeding that his investment decisions were independent of the actions of other defendants, the jury was free to conclude, based upon the evidence, that such acts were part of a scheme. There was sufficient evidence to support such an inference. In addition, the Government introduced evidence to suggest that defendant aided Chestnut in obtaining a loan. The fact that the Third Circuit reversed the conviction of Chestnut does not effect the inferences to be drawn from defendant's conduct.

Thus, the jury had a basis under either § 1954 or under an aiding and abetting theory for convicting the defendant. Under neither theory does the conviction violate the constitutional prohibition against ex post facto laws.

*6. Inadmissible Hearsay.*

In his motion for post-conviction relief under § 2255, defendant indicated that he was claiming an entitlement to a new trial because the prosecution relied on inadmissible hearsay, the use of which denied him his Sixth Amendment right to confront witnesses and his Fifth Amendment right to due process.

The remedy of a new trial sought by the defendant is not available under § 2255. Nor does his claim of trial error in the admission of evidence present a claim of constitutional dimension cognizable in this proceeding.

Having considered and rejected all grounds advanced in support of this motion, the court will deny defendant's application to vacate the judgment of conviction or alternatively for a new trial. The attached order will be entered.