**Jeffrey LEVINGSTON, Trustee For Farrish Gravel Co., Inc., et al., Plaintiffs,**

v.

**ALLIS–CHALMERS CORPORATION, et al., Defendants.**

**Civ. A. No. J83–0688(B).**

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 11, 1985.

---

John B. Clark, Michael Ellingburg, Terry R. Levy, Jackson, Miss., for plaintiffs.

William F. Goodman, Jr., Thomas M. Murphree, Jr., Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This matter is before the Court on the Application of Defendants, Allis-Chalmers Corporation, et al. ("Allis-Chalmers"), for Review of the April 29, 1985, Order entered by the United States Magistrate, requiring Plaintiffs, Hartford Accident and Indemnity Company, et al. ("Hartford"), to produce certain documents submitted by Hartford to the Magistrate for *in camera* review and to seal others on the basis of attorney-client and/or work product privilege.

Allis-Chalmers challenges the propriety of the Order of the Magistrate withholding certain documents on the basis of privilege and requests this Court to review those documents withheld by the Magistrate and to produce all documents subject to discovery based upon an independent *in camera* inspection by this Court. The documents Allis-Chalmers requests this Court to review fall into the following categories as previously designated by Hartford:

 1. Correspondence between Hartford and its attorneys, Daniel, Coker, Horton

and Bell, relating to lawsuits and claims on the bonds on the Farrish Companies.

2. Correspondence between Hartford and its attorneys, Daniel, Coker, Horton and Bell, relating to the specific litigation involved in this case.

3. Information relating to litigated cases and disputed claims against Hartford bonds which contain notes, highlighting, and interlineation revealing the thought processes of Hartford's representatives and lawyers in disputed cases that were either settled or litigated.

4. Hartford internal reports and correspondence including reports on litigated cases and disputed claims and reports to co-insurers on the status of disputed claims.

5. Documents relating to experts or other attorneys employed by Hartford to assist in the evaluation of disputed claims against Hartford on the bonds and to assist in the preparation for trial of cases against Hartford on the bond including the instant case. This includes documents relating to the following experts:

Charles E. Snow, P.A., Attorney, Accounting and Surety Consultant.

Tobias, Fleishman, Shapiro & Co., Certified Public Accountants and Surety Consultants.

Touche Ross & Co., Certified Public Accountants.

Ross, Eubanks & Betts, Certified Public Accountants.

6. Correspondence between Hartford and its attorneys in Memphis, Warring, Cox, Sklar, Allen, Chafetz & Watson.

7. Correspondence between Hartford's attorneys in the instant case and other attorneys involved in proceedings relating to the Farrish companies who represented companies with a joint and mutual interest in the matter which is the subject of the correspondence.

8. Correspondence between Hartford and its attorneys and Farrish's individual attorneys.

9. Correspondence from Hartford or its attorneys to counsel for parties making claims against Hartford or to others in those instances where the correspondence contains a blind postscript to Hartford's counsel.

10. Documents relating to the compromise and settlement of litigation against Hartford and disputed claims in which suit was threatened.

11. Certain documents from Farrish files relating to work with and actions by Hartford.

12. Documents gathered from the State Highway Department files by Hartford's attorneys and shown to experts.

13. Correspondence and reports from Vardaman Dunn relating to litigation he was handling for Farrish or the Hartford Insurance Company.

14. Bills rendered by Daniel, Coker, Horton and Bell for services.

15. Correspondence with Levingston and Farrish directly relating to the subject case.

16. Correspondence between Hartford and other sureties on the Farrish projects.

17. Correspondence relating to litigation other than the Stansteel litigation.

18. Daniel, Coker, Horton and Bell internal reports on Stansteel litigation.

19. Other Stansteel correspondence.

20. Checks and schedules showing payments by Hartford to its attorneys and the reimbursement of litigation expenses.

Allis-Chalmers particularly objects to the withholding by the Magistrate of documents authored or received by Messrs. Snow and Hyatt, consultants hired by Hartford to assist Hartford in completing the Farrish Gravel Company ("Farrish") bonded projects.

### THE DOCUMENTS

In essence, the documents withheld by the Magistrate on the basis of attorney-client and/or work product privilege are documents which were generated during the completion by Hartford of the Farrish

bonded jobs and were authored or received by two or more of the following: attorneys for Hartford; representatives for Hartford; consultants for Hartford, Snow and Hyatt; and other attorneys involved in disputed claims against Hartford arising out of the Farrish bonded jobs.

 Snow, a surety consultant, was engaged by Hartford in 1981 to assist it with the completion of the Farrish jobs and the investigation of claims against the Hartford bonds by unpaid subcontractors and material suppliers of Farrish. As such, Snow and his employee, Hyatt, have first hand knowledge of the status of the Farrish projects when Hartford took over completion of the projects. Snow and Hyatt were not hired by Hartford "in anticipation of litigation"—particularly not the instant litigation. To the contrary, Snow and Hyatt were engaged by Hartford to ascertain the status of the Farrish projects, determine what needed to be completed on certain jobs and project the costs to be incurred by Hartford to complete the Farrish projects. *See* Depositions of Summer, p. 10 and Mathieu, p. 46. Moreover, neither Snow nor Hyatt were listed by Hartford as Rule 26(b)(4)(A) experts in response to an interrogatory requesting a list of expert witnesses. Snow and Hyatt are "actors" or "viewers" who are to be treated as ordinary witnesses from whom all facts known and opinions held are freely discoverable. Wright and Miller, *Federal Practice and Procedure*, §§ 2029, 2033, p. 250–51, 258. Therefore, documents authored or received by Snow and/or Hyatt (Category No. 5 above) are freely discoverable (with exceptions noted in the Appendix) and the Order of the Magistrate withholding these documents is clearly erroneous. Those documents in category No. 5 which are not being produced are protected by the attorney-client or work product privilege.

 Further, Hartford has not demonstrated that the Snow/Hyatt documents were created "to aid in possible future litigation" as required to obtain protection of the Snow/Hyatt documents as work product. *See, e.g., United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.1981). The Court finds, based upon its *in camera* review of the Snow/Hyatt documents, that these documents were created primarily in connection with completion of the Farrish projects and analysis of claims against Hartford's bonds on Farrish projects. Consequently, even if the Snow/Hyatt documents can be classified as work product, that privilege is not absolute and does not extend to subsequent, unrelated cases as discussed hereinafter.

The remaining documents withheld by the Magistrate on the basis of attorney-client or work product privilege have been carefully examined by the Court to evaluate the applicability of the attorney-client or work product privilege. *See, e.g., United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983). Based upon its *in camera* review, the Court concludes, for reasons stated hereinafter, that those categories listed in the Appendix to this Memorandum Opinion and Order are not entitled to protection on the basis of attorney-client or work product privilege and are to be produced.

## ATTORNEY–CLIENT PRIVILEGE

 Category Nos. 1, 2, 6, 7, 8, 13, 15 and portions of category Nos. 5 and 9 (as noted in the Appendix) are protected against disclosure on the basis of attorney-client privilege. The attorney-client privilege protects communications between attorney and client made for the purpose of furnishing or obtaining professional legal advice or assistance. *In re LTV Securities Litigation*, 89 F.R.D. 595, 599–600 (N.D. Tex.1981). The privilege exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound advice. *Upjohn Company v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981). Whenever legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relevant to that purpose, made in confidence by the client, are, at the instance of

the client, permanently protected. *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir.1977). Thus, once the attorney-client relationship is established, the inquiry focuses on the nature of the communication or the information sought. *Matter of Walsh*, 623 F.2d 489, 494 (7th Cir.), *cert. denied sub nom. Walsh v. United States*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980).

However, the attorney-client privilege is construed "no more broadly than is necessary to effectuate its purpose." *In re LTV Securities Litigation*, 89 F.R.D. at 600. The attorney-client relationship itself does not create a cloak of protection for all conversations between attorney and client. *Matter of Walsh*, 623 F.2d at 494; *Diversified Industries, Inc. v. Meredith*, 572 F.2d at 602. Indeed, the privilege does not protect communications between the client and one not a lawyer. *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). Nor does the privilege protect a communication simply because it is made by or to a person who happens to be a lawyer. *Diversified Industries, Inc. v. Meredith*, 572 F.2d at 602. Moreover, facts in and of themselves are not privileged. *Upjohn Company v. United States*, 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981); *Byers v. Burleson*, 100 F.R.D. 436, 438 (D.C.D.C.1983); *In re LTV Securities Litigation*, 89 F.R.D. at 603. Nor do facts become privileged simply because the client tells the attorney or the attorney tells the client. *Sendi v. Prudential-Bache Securities*, 100 F.R.D. 21, 24 (D.C.D.C.1983). As stated in *Upjohn Company v. United States*, 449 U.S. at 383, 101 S.Ct. at 678,

> [t]he privilege only protects disclosure of communication; it does not protect disclosure of the underlying facts by those who communicated with the attorneys....

Based upon the above analysis, this Court finds that the attorney-client privilege extends to those documents between Hartford and its attorneys which were made for the purpose of furnishing or obtaining professional legal advice and as-sistance. The Court finds that the privilege also extends to communications among the attorneys for co-parties where the communications are designed to further a joint or common interest. *Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965); *United States v. Cariello*, 536 F.Supp. 698, 702 (D.N.J.1982); *Fred Weber, Inc. v. Shell Oil Co.*, 432 F.Supp. 694, 697 (E.D.Mo.1977), *aff'd.* 566 F.2d 602 (8th Cir.), *cert. denied*, 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978); *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 564 (S.D.N.Y.1977).

Category Nos. 1 and 2 and portions of category No. 9 fall squarely within the confines of the attorney-client privilege. These communications were clearly made for the purpose of furnishing or obtaining legal advice. Category Nos. 6, 7, 8 and 15 fall within the scope of the attorney-client privilege since they are communications among attorneys for parties who share common interests and the communications are in furtherance of their interests. Category No. 13—correspondence between Vardaman Dunn, as attorney for Farrish, and Mr. Farrish or the attorneys for Hartford—would be protected from discovery at Mr. Farrish's request. Since Hartford, as assignee of Farrish, stands in the shoes of Farrish, *Int'l Harvester Co. v. Peoples Bank and Trust Co.*, 402 So.2d 856 (Miss. 1981), the Court finds that Hartford may raise the attorney-client privilege on behalf of Farrish.

Information relating to billing, fee arrangements and payment of attorney's fees does not fall within the attorney-client privilege. *In re Osterhoudt*, 722 F.2d 591, 592 (9th Cir.1983); *Oliver B. Cannon & Son v. Fidelity & Casualty Co.*, 519 F.Supp. 668, 680 (D.Del.1981). Consequently, those documents in category Nos. 14 and 20 will be produced insofar as they relate to fees charged and collected by the Hartford attorneys.

## WORK PRODUCT PRIVILEGE

Allis-Chalmers claims that documents created primarily in connection with completion of the Farrish jobs or claims against the Hartford bonds are dis-

coverable since "the primary motivating purpose behind the creation of the document" was not as an aid in possible future litigation. *See, e.g., United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir.1981). Hartford, on the other hand, maintains that the correspondence, reports, summaries and other documents generated in the face of scores of lawsuits and pending claims against it are protected by the work product privilege because the privilege extends to documents prepared in anticipation of prior, terminated litigation. *See, e.g., In re Murphy,* 560 F.2d 326, 333–35 (8th Cir. 1977).

As stated in *Grolier, Inc. v. Federal Trade Commission,* 671 F.2d 553, 555 (D.C.Cir.1982), a dispute exists among the courts regarding whether the work product privilege lapses once the litigation ends or the prospect for litigation ends. *See also, Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 865 (D.C.Cir. 1980). Three divergent views have been followed by the courts in deciding whether the work product privilege extends beyond the termination of litigation.

Some courts adhere to the view that the work product privilege applies only if the materials were prepared in anticipation of the very suit before the court. Thus, documents prepared for one case are freely discoverable in another case. *United States v. Int'l Business Machines Corp.,* 66 F.R.D. 154, 178 (S.D.N.Y.1974) (documents must be prepared in anticipation of litigation in which special immunity accorded to such material is sought); *Honeywell, Inc. v. Piper Aircraft Corp.,* 50 F.R.D. 117, 119 (M.D.Pa.1970) (same); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 207 F.Supp. 407, 410 (M.D.Pa.1962) (materials must be prepared for case at bar); *Gulf Construction Company v. St. Joe Paper Company,* 24 F.R.D. 411, 415 (S.D.Tex.1959) (same); *Tobacco & Allied Stocks, Inc. v. Transamerica Corp.,* 16 F.R.D. 534, 537 (D.Del.1954) (same).

Other courts have held that there is a "perpetual protection" for work product, extending beyond the termination for litigation for which the documents were prepared. Thus, documents prepared in one case may never be disclosed in a subsequent case. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480, 483–84 (4th Cir.1973); *United States v. O.K. Tire Co.,* 71 F.R.D. 465, 468 n. 7 (D.Idaho 1976); *Burlington Indus. v. Exxon Corp.,* 65 F.R.D. 26, 43 (D.Md.1974).

There is a third, intermediate approach under which the extension of the work product privilege from one case to a subsequent one depends upon "whether the first action was complete and upon the relationship between the first and second actions." 4 J. Moore, *Federal Practice* § 26–64[2] at 26–415 (2d ed. 1979). A substantial body of law supports the conclusion that the work product privilege extends to subsequent cases only when they are related. *See, e.g., Republic Gear Co. v. Borg-Warner Co.,* 381 F.2d 551, 557 (2d Cir.1967); *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136, 153 (D.Del.1977); *Midland Investment Co. v. Van Alstyne, Noel & Co.,* 59 F.R.D. 134, 138 (S.D.N.Y.1973).

Since the Fifth Circuit has yet to address the issue of the extent of the work product privilege, this Court is of the opinion that this third, intermediate approach best comports with the fact that the privilege is qualified and not absolute. Indeed, as stated in *In re Grand Jury Proceedings,* 73 F.R.D. 647, 653 (M.D.Fla.1977),

> Where the work product materials in question were prepared for a distinct and prior ... litigation, long completed, the policies underlying the work product privilege have already been achieved.

■ The instant litigation is inarguably unrelated to the prior litigation involving claims by subcontractors and suppliers of Farrish against the Hartford bonds. Accordingly, this Court finds that some of the documents withheld by the Magistrate on the basis of work product privilege were generated in connection with prior, terminated and wholly unrelated cases. Specifically, the Court finds that the work product privilege does not extend to protect all of those documents in category Nos. 3, 4, 5, 9, 10, 11, 16 and 17 and, except those documents that are protected as listed in the Appendix, they are freely discoverable.

Documents in category Nos. 18 and 19 were clearly created as an aid to this litigation and contain mental impressions and opinions of the Hartford attorneys. Accordingly, category Nos. 18 and 19 will not be produced.

▌ Although this Court finds that the work product privilege is inapplicable to those documents generated in prior, terminated, unrelated proceedings, this Court is also of the opinion that Allis-Chalmers has overcome the privilege by demonstrating substantial need for the documents ordered produced in category Nos. 3, 4, 5, 9, 10, 11, 16 and 17 and an inability to procure the substantial equivalent elsewhere. Hartford blames Allis-Chalmers for the destruction of the Farrish business. In so doing, Hartford has placed at issue whether or not other factors caused or contributed to the destruction of the Farrish business. As such, Allis-Chalmers is entitled to ascertain whether other factors existed which caused or contributed to the destruction of the Farrish business. Therefore, those documents identified in the appendix which were previously withheld by the Magistrate by virtue of the work product privilege shall be produced.

▌ With regard to category No. 3 which Hartford claims is protected as opinion work product, the Court is aware that Rule 26(b)(3) extends special protection to an attorney's mental impressions, conclusions, opinions or legal theories. The documents ordered produced under Category No. 3 do not fall within opinion work product. Those documents or portions of documents excluded from production under category No. 3 are privileged as either opinion work product relating to the instant case or as attorney-client privilege. This Court finds that opinion work product is protected against disclosure in subsequent cases unless the materials are "at issue" in the case presently before the Court. *See, e.g., In Re Murphy,* 560 F.2d 326 (8th Cir. 1977).

Of course, the ruling of the Court speaks only to the discovery process. The admissibility at trial of the documents ordered produced is not addressed.

▌ Allis-Chalmers also seeks an Order of this Court authorizing the discovery depositions of Messrs. Shapiro, Snow and Hyatt. Mr. Shapiro is an accountant who was engaged by Hartford in 1981 because of his contractor accounting expertise to evaluate the financial position of Farrish. *See* Depo. of Mathieu, pp. 11–13. His reports were produced to Allis-Chalmers in May 1985. Indeed, Mr. Mathieu, the Hartford representative, specifically stated that Mr. Shapiro was not hired by Hartford to assist it with the instant litigation. *See* Depo. of Mathieu, pp. 12–13. Accordingly, the Court finds that Mr. Shapiro, like Messrs. Snow and Hyatt, is an "actor", "viewer" from whom all facts known and opinions held are freely discoverable. Due to the protracted nature of this litigation, this Court will eliminate the necessity of obtaining an Order from the Magistrate regarding the discovery depositions of Messrs. Shapiro, Snow and Hyatt and hereby authorizes Allis-Chalmers to take their depositions. If the time for discovery in this case has expired, then it is reopened for 30 days from the date of this Memorandum Opinion for the purpose of taking these depositions. If the time for discovery has not expired, then these depositions shall be taken within the remaining time.

### APPENDIX TO MEMORANDUM OPINION AND ORDER

The following documents shall be produced to the Defendant by the Plaintiffs:

a) Category No. 3 except Bates Nos. 353048 through 353055, 353106 through 353120, 352685 through 352686, 352782 and the footnote on 353152;

b) Category No. 4 except Bates No. 353161;

c) Category No. 5 except Bates Nos.

| | |
|---|---|
| 351386 | 352773 |
| 406–407 | 778 |
| 408–410 | 779–780 |
| 352728 | 783 |
| 735 | 784 |
| 736 | 785 |
| 743 | 786–787 |
| 744–751 | 788 |

c) Category No. 5 except Bates Nos.

| | |
|---|---|
| 752 | 789 |
| 769 | 792 |
| 770 | 967–979 |
| | 353000 |

and the footnotes on Bates Nos. 352095 through 352097;

d) Category No. 9 except the footnotes on Bates Nos. 352628, 352675 and 352753;

e) Category No. 10;

f) Category No. 11 except Bates Nos. 260000, 260013 through 260014;

g) Category No. 12—No documents were submitted to the Court under Category No. 12;

h) Category No. 14;

i) Category No. 16;

j) Category No. 17;