**JAROSLAWICZ**

v.

**ENGELHARD CORP., et al.**

Civ. A. No. 84–3641(CSF).

United States District Court,
D. New Jersey.

March 24, 1987.

**516**

Dennis LaFiura, Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for defendants.

Gladstone & Hart, Marvin H. Gladstone, Hackensack, N.J., for plaintiff.

FREDA L. WOLFSON, United States Magistrate.

This matter is before the Court on the motion of plaintiff, Moses Jaroslawicz ("Jaroslawicz") to conduct an *in camera* review of those documents for which the defendants, Engelhard Corporation, et al ("Engelhard") have made one or more claims of privilege. Engelhard, while persisting in its claims of privilege, did not oppose plaintiff's motion for the *in camera* review and provided the documents to me by letter of March 10, 1987. I have completed my review of those documents as well as the relevant case law and asserted privileges, and I will now turn to the results of that *in camera* review.

The documents for which Engelhard seeks protection are identified by the defendant as follows:

1. Date: November 6, 1984
 Author: Arthur A. Dornbusch, II, Esq.
 Recipient: James G. Mann, Esq.
 Copies: Freedom of Information Act Officer, Securities and Exchange Commission
 Subject: Response to SEC of Engelhard Corporation in *In the Matter of Engelhard Corporation*
 Privilege: FOIA confidential treatment; AC/WP
2. Date: November 6, 1984
 Author: Arthur A. Dornbusch, II, Esq.
 Recipient: James G. Mann, Esq.
 Copies: Freedom of Information Act Officer, Securities and Exchange Commission
 Subject: Response to SEC of Engelhard Corporation in *In the Matter of Engelhard Corporation*
 Privilege: FOIA Confidential treatment; AC/WP
3. Date: September 21, 1984
 Author: G.J. Dobson, Arthur A. Dornbusch, II, Esq.
 Recipient: P.B.J. Sargent
 Copies: R.W. Boyle, S.N. Roseberry
 Subject: Memorandum from corporate official transmitting attorney's requesting for information regarding September 7, 1984 inquiry letter received by Engelhard Corporation from Securities and Exchange Commission
 Privilege: AC/WP

■ As to items one and two on the above list, Engelhard claims that these documents are protected from disclosure by three privileges: the Freedom of Information Act (FOIA), the attorney-client privilege and the attorney-work product privilege. As to the first privilege claimed, the FOIA, Engelhard contends that the documents are exempt from public availability since these documents meet the three criteria under 5 U.S.C. § 552(b)(4); they are commercial or financial, obtained from a person outside the government, and privileged or confidential. *Braintree Electric Light Department v. Department of Energy*, 494 F.Supp. 287, 289–90 (D.D.C.1980). However, the FOIA is specifically addressed to disclosures to the public by the *agency* to whom the documents were supplied (here, the SEC) and not disclosure by the party who supplied the documents (Engelhard). Thus, since the plaintiff has not served an FOIA request upon the SEC, the invocation of the FOIA privilege by Engelhard does not appear to be appropriate. *cf. Worthington Compressors, Inc. v. Costle*, 662 F.2d 45, 54 (D.C.Cir.1981) (in reverse

FOIA case, applicability of exemption for confidential information does not give the person supplying the information a right to compel the agency to withhold the requested material).

 Having decided that Engelhard may not assert the FOIA privilege when demand has been made of Engelhard, and not the SEC, for those documents, doesn't however resolve the remaining privilege issues. Engelhard has also asserted privileges based upon attorney-work product and attorney-client.[1] Essentially, Engelhard claims that the documents are subject to the attorney-work product privilege because they have been "collected, reviewed and produced by an attorney in the course of responding to a formal investigation." (Engelhard letter memorandum at 3). The Third Circuit case of *Sporck v. Peil,* 759 F.2d, 312, 316 (3d Cir.), cert. denied, —— U.S. ——, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985) supports this general proposition. There, the court held that "the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Sporck v. Peil,* 759 F.2d at 316. But for the attorney-work product privilege to attach, it is required that the attorney's review, collection and production of confidential documents be accomplished in contemplation of future litigation. In the instant case, Engelhard argues that the compilation of those documents for the SEC investigation was done with a view of possibility of future litigation arising. I agree that future litigation was a possibility, as it always is, when an SEC investigation is undertaken. But, there is an additional theory upon

which to extend the work product privilege to the documents culled for purposes of the SEC investigation. The work product privilege applies to materials prepared in connection with a previous case, at least where the actions are related. *See In Re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 798 (3d Cir.1979) (court found identity of subject matter and temporal connection to exist between civil and grand jury proceedings, and held documents prepared for earlier civil proceeding to be protected). The SEC investigation and this litigation focused on the same corporate transactions and thus, are related. Since the SEC investigation is an adversarial proceeding, *Zenith Radio Corp., v. Radio Corp. of America,* 121 F.Supp. 792, 795, (D.Dela.1954) the doctrine of work product, which is protected in one litigation, continuing to a related litigation applies.[2]

I have concluded that the documents identified in items one and two are protected by the work product privilege and in accordance with *Sporck v. Peil, supra,* these documents fall within the "highly protected category of opinion work product" since they involve the selection and compilation of documents by counsel in preparation for discovery or in anticipation of litigation. *Sporck v. Peil,* 759 F.2d at 316. It has been reasoned that such material is accorded an almost absolute protection from discovery because disclosing the factual content of such items is outweighed by the interest in protecting an attorney's thought processes in insuring that discovery does not "enable a learned profession to perform its functions ... on wits borrowed from the adversary." *See e.g., Upjohn Company v. United States,* 449

---

1. However, Engelhard has not addressed the attorney-client privilege and does not seem to be pressing it directly. Indeed, one of the cases it cites, *Permian Corp. v. United States,* 665 F.2d 1214 (D.C.Cir.1981), holds that documents submitted to the SEC were no longer protected by the attorney-client privilege, although the work product doctrine was applicable.

2. As recognized in the case of *Levingston v. Allis-Chalmers Corp.,* 109 F.R.D. 546 (S.D.Miss. 1985), a dispute exists among the circuits regarding whether the work product privilege

lapses once a litigation ends. In *Levingston,* the court outlines the three views: 1) that the work product privilege applies only if the materials were prepared in anticipation of the very suit before the court; 2) perpetual protection extending for any future case, whether related or unrelated and the third theory based upon whether the actions are related. As demonstrated by the *In re Grand Jury Proceedings* case, *supra,* the Third Circuit, at the very least, would allow a continuing protection for a related case.

U.S. 383, 396, 101 S.Ct. 677, 686, 66 L.Ed.2d 584, 595 (1981); *Hickman v. Taylor*, 329 U.S. 495, 516, 67 S.Ct. 385, 396, 91 L.Ed. 451 (1947). There has not been a showing here to overcome the privilege.

■ However, I hasten to add that the privilege only protects the disclosure of the protected documents; it does not protect disclosure of the underlying facts in the documents. "Protection of the privilege extends only to communications and not to facts. The fact is one thing and a communication concerning that fact is entirely different." *Upjohn Co., v. United States*, 449 U.S. at 395–96, 101 S.Ct. at 685–86, *quoting Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (E.D. Pa.1962). *See also, In re International Systems & Controls Corp. v. International Systems and Control Corp.*, 693 F.2d 1235, 1240–41 (5th Cir.1982). Based upon my *in camera* review of the documents identified in items one and two, plaintiff through its adversarial skill may still obtain discovery of the information contained in those documents, through plaintiff's own work product, by recognizing and questioning petitioner in the appropriate areas.

■ The third item for which Engelhard seeks protection is documents prepared and transmitted by Engelhard personnel to Arthur A. Dornbusch, II, General Counsel for Engelhard, in connection with a request for information from the SEC. It is beyond cavil that such communications are privileged so long as the attorney is acting in his legal capacity and the information is being gathered pursuant to his instructions in connection with the rendering of legal advice. *Upjohn Co., v. United States*, 449 U.S. at 391–92, 101 S.Ct. at 683–84 (1981). In this case, Mr. Dobson, an executive of Engelhard in the United Kingdom, requested that information be gathered for use in connection with the SEC investigation. This information had been requested of the General Counsel and, presumably, it was pursuant to his directive that the information was being requested by Dobson. At least as to the Dobson memo located at page 12, the privilege at-

taches. Furthermore, the notes and drafts furnished by the Engelhard executives in response to the request, appearing at pages 20 through 29, are also protected by the attorney-client privilege. However, I find that the documents located at 13 through 19 are not so protected.

■ Pages 13 through 16 comprise one document—a letter from the Securities and Exchange Commission to General Counsel for Engelhard Corporation. The subject of this letter is the request for information and documents for use in connection with the SEC investigation. Certainly, this is not a document generated between the client and counsel and is not afforded any protection. There are some handwritten notations appearing in the margin of this letter, which were apparently made by Engelhard personnel. These handwritten notations are protected and should be shielded from disclosure. They may be whited-out or otherwise concealed. The documents appearing at pages 17 through 19 are not protected by any privilege. These are simply forms issued by the SEC detailing the "Routine Uses of Information Furnished to the Securities and Exchange Commission" and "Notice Pursuant to the Privacy Act of 1974 to Individuals Requested to Supply Information Voluntarily." There is no basis for protecting this document either. Although Engelhard may contend that protection should be afforded to these two SEC communications because they were attached to the Dobson memo issued to Engelhard personnel, this is not a basis for extending the privilege to a document which is not privileged; indeed, somewhere in the Engelhard files, I would assume that the SEC-generated letter and forms appear without attachment to the Dobson memo.

In sum, I find that the work product privilege attaches to items one and two of the Engelhard privilege document list and that the attorney-client privilege attaches to only so much of item three as appears at pages 12, and 20 through 29. Engelhard is directed to produce to the plaintiff the documents appearing at pages 13 through 19.

To the extent that there are notations by Engelhard on the document appearing at pages 13 through 16, these markings should be deleted and a clean copy supplied to the plaintiff. An order will be entered accordingly.